Clapp v. LaGrill.

CLAPP v. LAGRILL.

*(Jackson.    April  18,   1899.)*

1. PUBLIC HIGHWAYS. *Duty and liability of owners of adjacent lands.*

The owner of real estate adjacent.to a public highway must keep it in such condition near the highway as not to endanger persons traveling with due caution along the highway. If, in express terms or by implication, he invites the public to come upon his premises and use them, he must keep them in such condition that persons using them by such invitation, with due caution, shall not be injured by defects therein. But he owes no duty to trespassers or mere licensees who come upon his premises without invitation, express or implied. They assume all risks. *(Post, pp. 165–177.)*

Cases cited: Niblett *v.* Nashville, 12 Heis., 684; 68 N. Y., 292; 26 L. R. A., 686; 53 Conn., 186; 4 C. B. (N. S.), 556; 7 *Id.*, 731; 115 N. Y., 56 (S. C., 12 Am. St. R., 772); 70 Texas, 400 (S. C., 8 Am. St. R., 611); 16 L. R. A., 640; 38 L. R. A., 573; 134 Ind., 269 (S. C., 39 Am. St. R., 261); 143 Ill., 182 (S. C., 36 Am. St. R., 376); 156 Mon., 426 (S. C., 32 Am. St. R., 463); 4 Ohio St. R., 236.

2. SAME. *Same.*

Whether the owner of real estate adjacent to a public highway has extended an invitation to the public to enter upon and use it is a question for the jury to determine from all the facts and circumstances, and should not be arbitrarily assumed to be one way or the other in the Court's charge to the jury. *(Post, pp. 177, 178.)*

3. SAME. *Same.*

If a third person, for whose act the owner is not responsible, creates a dangerous state of affairs on the latter's property, of which he had no knowledge, and which, by using ordinary diligence, he could not know, then he would not be held re-

Clapp *v.* LaGrill.

sponsible therefor, even to a party injured while rightfully on the premises. (*Post, p. 178.*)

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. J. S. GALLOWAY, J.

METCALF & WALKER for Clapp.

BROWN, HIRSH & BROWN for LaGrill.

WILKES, J. This is an action for damages for personal injuries. It was tried before the Court and a jury, and a verdict and judgment rendered for $1,000 and cost, and defendant, Clapp, has appealed and assigned quite a number of errors. There is practically no contest as to the facts. It appears that Hook and LaGrill occupied storehouse No. 233 on Second Street, in the city of Memphis, as tenants of Grosvenor and Clapp, who also owned No. 231 adjoining No. 233 on the north. No. 229, the next house on the north, was owned by the Livermore Foundry Company. These houses were constructed on the same plan, and extended from Second Street to a point 3½ feet east of the line of the alley between Second and Main Streets. Under each storehouse there was a cellar, or basement, 13

feet deep, which extended beyond the walls of
the houses up to the alley line, the space inter-
vening between the west walls of the houses and
the east line of the alley being covered by iron
gratings. When Hook and LaGrill rented their
house on July 1, 1896, they found the gratings
in the rear of it badly broken and damaged, and
called the attention of Mr. Grosvenor to its con-
dition, and it was repaired by removing the iron
grating and substituting for it a wooden grating
made of 2x4 scantling. Immediately west of the
grating there was a public alley, and between
the alley and grating there was a granolith walk
two feet wide. This appears to have been flush
with the grating, but was distinguishable from it,
the walk being artificial stone and the grating
iron. The rear doors of the stores opened upon
this grating for tenants to pass over the grating
to the sidewalk, or over it into the alley.

The injury occurred July 29, 1897, and in
the rear of storehouse No. 231, which was at
the time unoccupied.

Mr. LaGrill passed out of the rear door of
his store and started to go to his lunch on Main
Street, as was his daily custom. In doing so it
was necessary to pass in the rear of No. 231.
It appears that about the place the accident oc-
curred a wagon was blocking the alley and walk.
This wagon belonged to Mr. LaGrill. In passing
by this wagon he walked upon the grating in the

rear of the stores, where he stepped upon what is called grating No. 2, in rear of 231, and it gave way beneath his feet and he fell into the cellar, a distance of about 13 feet, and a part of the grating falling upon his left thigh made a wound, and his right arm and left hip were also hurt. It appears that LaGrill knew this grating was cracked and had been all the time from the date he first went into occupancy of 233, but he says he did not know whether the crack extended across the entire grating or not. Evidence was introduced to show that this crack had been caused by the piling of barbed wire upon the grating by the foundry company, or by throwing it upon the grating, and that Grosvenor and Clapp did not know that it was cracked or that there was any defect in it.

Mr. LaGrill's statement, in substance, is that he came out of his rear door, and, in trying to avoid the cobble stones of the pavements, which were rough, his feet being tender, he passed over the grating, and, stepping on the defective plate, went down, and the plate with him. He is not definite as to the point where he went on the grating, whether he walked on it all the way from his store or part of the way on the walk, his only distinct recollection being that he was avoiding the cobble stones. He had frequently passed upon this grating No. 2, and knew it was cracked before he went on it on this occa-

sion. The wagon that was in the alley was across the walk and blocked passage on the walk at that point, and was his property, or that of his firm. There was ample room to pass around it in the alley, but, on account of the rough cobble stones with which the alley was paved, he preferred to pass over the grating. In another part of his statement he says he entered on the grating when he came out of the rear door of his own storehouse, and continued to walk on it until he reached the point where the defect was and where he fell into the basement.

The assignments of errors may be grouped and need not be considered seriatim. It is said the Court erred in saying to the jury:

"Where the grating is on the public highway or adjoining or so near to it that it might be used at any time by anyone using the alley, then a person so using it would have the right to presume that it was safe and to use it in the way that an ordinarily careful, prudent person would use it." And again: "If you find that an excavation was made between the house and sidewalk, then it was defendant's duty to see that the space was covered over in such a way as to make it safe for the uses which the public might reasonably be expected to make of that space, from its position and the condition it was in." And again: "If the grating was ordinarily safe and suitable for use in such a place, there would

Clapp *v.* LaGrill.

be no liability, but if it were unsafe and dangerous to use such grating, then there would be liability." And again: "Whatever was necessary to be done in order to prevent the grating from getting into such an impaired state as to endanger the public, which impairment arose from the use made of it and the ordinary wear and tear arising from such use, then such care should have been exercised over it as would have prevented such impairment of the grating. If you find that the defendant permitted the grating in the rear of No. 231 to get into such a state of disrepair as to endanger the public in the use they were permitted to make of such grating, and, as a consequence, plaintiff, without any fault on his part, fell through and was injured, he has a right to recover. "

Other assignments are made which virtually raise the same questions of law, but the above are sufficient to present them fairly and present the main assignments of error.

The appellant insists that the learned trial Judge, in his charge, assumed that the public had a right to use this grating as a walkway, and that an invitation, expressed or implied, was extended by the owner to so use it, and the jury were misled to believe that because it was adjoining the walkway and alley and there was no curb or separating wall, the public was authorized to so use it. It is conceded by appellant

that when an owner of contiguous property makes an excavation near a street or alongside it, he should use reasonable care to so protect it as that a person passing it may not inadvertently and without negligence fall into it and be injured, but it is contended, on the other hand, that where there is no invitation, express or implied, to pass over private property or use it as a walkway, there is no such right, and a party who uses it as a passageway does so at his peril. We think it clear that when the owner of land, expressly or by implication, invites the public, or third person, to come upon his land or use it as a passway, he cannot permit a snare or danger to exist thereon which results in injury to the person who accepts the invitation, and who, at the time, is exercising ordinary care, without being answerable for the injury. So, also, if an owner of a building near a street line throws open the intervening space to public use and, by paving it like the sidewalk invites the public to use it as a part of the sidewalk, he is bound to keep it free from danger. In support of these propositions counsel for appellee cites as leading cases: *Beck* v. *Carter,* 68 N. Y., 292; *Lepnick* v. *Gaddis,* 26 L. R. A., 686; *Crogan* v. *Scheile.* 53 Conn., 186. These cases support the contention and are not, as we understand it, questioned by appellant as to their cor-

Clapp *v.* LaGrill.

rectness, but only as their application to this case.

The case of *Beck* v. *Carter* is reported in 23 Am. Rep., p. 175. The Court in that case said: "An owner of land is not bound by common law to fence his land or in any way to mark the boundaries of his possession. He may leave it open and a person entering thereon without permission is a trespasser, and it is no excuse that the entry was made innocently and by mistake, and the rule is the same with respect to a traveler on a highway who without necessity goes therefrom onto the adjoining land. The owner of land may also make an excavation on his own premises, and is not bound to fence it for the protection of persons not lawfully upon the land. In the absence of special circumstances, if a person traveling on a highway deviates therefrom and falls into a pit or excavation on the adjacent land, the owner is not responsible for the resulting injury." The Court continues: "There is a distinction which we think has an application in this case. Where the owner of land, expressly or by implication, invites a person to come upon his land, he cannot permit anything in the nature of a snare to exist thereon which results in injury to the person who avails himself of the invitation, and who at the time is exercising ordinary care, without being answerable for the consequences. If, however, he gives

but a bare license or permission to cross his premises, the licensee takes the risk of accident in using the premises in the condition in which they are. The distinction is illustrated by the case of *Corby* v. *Gill,* 4 C. B. (N. S.), 556, and *Hounesell* v. *Smith,* 7 *Id.,* 731."

The Court was of opinion the facts in the case imposed a duty on the defendant to protect the excavation. It was made upon an open area in front of a hotel which had been used for a long time as a passageway by invitation of the owner, and had thus been made for the time being a public place, and part of the highway, and it was to the advantage of the owner that it be left open to the public for an entrance to his building. The distinction is fully illustrated by a number of cases cited in the notes, page 183, in which, also, the principle is announced that there is no duty on the owner of premises to keep them in safe condition so far as relates to those who come upon them for their own convenience and without invitation expressed or implied. The case of *Lepnick* v. *Gaddis,* 26 L. R. A., 686, is where a storehouse was burned which stood over a cistern in a lot, and which had thereafter been used as a part of the highway, and certain guards and protections were removed from around the cistern, which resulted in a party who was going over the passway being injured. This case is fully annotated and the dis-

tinctions between the cases are illustrated in detail.

The case of *Crogan* v. *Scheile,* 53 Conn., 186 (S. C., 55 Am. Rep., 88), is where a party owned a factory standing about ten feet from the line of the pavement and extending along the street about 80 feet. The space between the street line and pavement had been so paved that there was nothing to indicate where the street line ended. In front of the building the owner had erected a porch, which came within six feet of the street line and through which the building was entered; alongside the building and adjoining the porch was a deep and unfenced area. A woman unacquainted with the surroundings went to the factory after dark in search of her child, fell into the area and was injured, and the owner was held liable. The facts made a plain case of implied invitation to use the entire space as a passway, and there was nothing to distinguish the line between the street and the private property.

In all these cases there was plainly an indication more or less patent that the way was designed for the use of the public, and the public was either expressly or by implication invited to enter upon and use it, and under such circumstances the cases are uniform that there is liability for injuries arising out of dangerous conditions existing on the premises.

The doctrine is equally settled that when a person goes upon the premises of another without invitation, but simply as a licensee, and the owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a defect in the premises, the owner is not liable because the person has taken the risk upon himself. *Cusick* v. *Adams,* 115 N. Y., 56 (S. C., 12 Am. St. Rep., 772). In this case quite an array of authorities is cited, and the case of *Beck* v. *Carter,* supra, is commented on, and it is said that in the latter case there was an affirmative act on defendant's part which contributed to the occurrence, inasmuch as the owner had long suffered the land in front of his hotel to be used by the public as a highway, and it was to his advantage to leave the strip open to the public as a passway. In the case of *Cusick* v. *Adams* a bridge had been constructed connecting the owner's premises with the highway for his own convenience and purposes, and the public had used it without any invitation from the owner, but simply by his sufferance, and it was held that he was not liable for injury to a person who went upon it voluntarily. See to the same effect: *Galveston Oil Co.* v. *Morton,* 70 Tex., 400 (S. C., 8 Am. St. Rep., 611, and case cited); *Stergen* v. *Van Sicklen,* 16 L. R. A., 640. Nor will the fact that persons had been accustomed to go upon the premises and pass over them change

Clapp *v.* LaGrill.

the rule unless there is some invitation, allurement, or inducement to do so. *Murphy* v. *City of Brooklyn,* N. Y., 118, 576. In that case a boy was drowned in a hole by the side of a sewer constructed by defendant through private property and along which persons had been in a habit of traveling in going to the bay. The rule is clearly stated in *Dobbins* v. *The R. R.,* 38 L. R. A., 573 and 575. See also *Faris* v. *Hoberg,* 134 Ind., 269 (S. C., 39 Am. St. Rep., 261). There is in this latter case a collation of authorities, and the rule is laid down that the enticement, allurement, or inducement, as the case may be, must be the equivalent to an expressed or implied invitation to use the way as a public way. See, also, *Gibson* v. *Leonard,* 143 Ill., 182 (S. C., 36 Am. St. Rep., 376); *Plumner* v. *Dill,* 156 Mass., 426 (S. C., 32 Am. St. Rep., 463).

In the case of *Kelly* v. *Columbus,* 41 O. St. Rep., 236, it was held that the mere fact that a pavement extends beyond the limits of the street will not give a right of action to one walking on it if he knows that he had gone out of the boundary of the street, nor can it be treated as an implied invitation to step aside and follow it across private property without any purpose or object that could have been foreseen by the owner of the property. Other cases too nu-

merous to mention may be cited laying down the same doctrine.

There is another class of cases which holds that when an owner of property contiguous to a street or highway permits an excavation near the highway or passway, into which a person inadvertently or by accident falls while attempting to pass along the highway or passway, he will be liable for injuries resulting therefrom, but this is confined to cases where the person injured is attempting to pass along the way which is for the public, and inadvertently or by accident in the dark or otherwise falls into the excavation without fault or negligence on his part.

The case of *Niblett* v. *Nashville,* 12 Heis., 684, is a case combining the two classes. In that case an excavation had been made either on or adjoining an alley in the city of Nashville, and adjoining McKendree Church. Whether it was on the property of the church or in the alley does not clearly appear, but it was on the side of the alley and either in it or on the church lot adjoining it. This excavation had been made for convenient entrance into the basement of the church, and Niblett, at night, in endeavoring to cross the alley and approach the house, fell into this excavation and was injured. There was, therefore, in this case an invitation to the public by the church to use this entrance way to the church, and there was, as to the city, an excavation in or adjoining the alley, an attempt to enter the

entrance in the dark and an injury resulting therefrom. This case is not cited by counsel, and is not analogous to the case at bar.

Applying the principles laid down in the cases we have cited to the present one, we are of opinion the learned trial Judge incorrectly, in effect, though not in express words, assumed that the plaintiff was using this grating as a passway by implied invitation of the defendant and as a matter of right. The plaintiff shows clearly that he did not go upon it by inadvertence or accident or even necessity, but by design. He is not certain whether he passed over it from his own premises all the way to where he fell or whether he turned upon it when he reached his own wagon, which was standing upon and blocking the sidewalk. It does appear that he could have gone around the wagon by going into the alley, but he preferred to pass over the grating, in order to avoid the cobble stones of the alley, and this, too, when he was aware that the grating was cracked and defective. Whether he was justifiable in going over this grating as a matter of right and as a part of the highway, depends upon whether the owner had expressly or impliedly invited him and others to do so. That the grating was designed to be used as a convenience for ingress or egress to the rear of the defendant's store clearly appears, whether there was any invitation to the public to also use it as a passway

19 P—12

along the alley depends on its location, its construction, its material, and such other facts and circumstances as would indicate whether it was so designed to be used by the public and whether the public would so understand it. This question should have been submitted to the jury directly, but while the Court did not say in so many words that the plaintiff had a right to use it as a passway, such is the unavoidable inference from the several portions of the charge which we have cited and other parts not cited.

We are of opinion it was error not to give special instruction No. 2 asked for. This is, in substance, that if the grating had been broken or rendered defective by the Livermore Foundry Co. throwing barbed wire upon it, and this was done without the knowledge, consent, or authority of the owner, and while so broken the plaintiff was injured by stepping on it, then defendant, if he did not know of the defect, and, by the exercise of ordinary diligence could not know of it, would not be liable. If a third person creates a dangerous state of affairs on the owner's property, of which he had no knowledge and which by using ordinary care he could not know, then he would not be held responsible therefor, even to a party rightfully on the premises.

It is not necessary to pass upon the other assignments as the error pointed out must result in reversing the case and remanding it for a new trial. The appellee will pay costs of appeal.