NASHVILLE, C. & ST. L. RY. *v.* R. H. LOVEJOY.

## (*Nashville.* December Term, 1917.)

1 RAILROADS. Injuries to person on track. Keeping lookout.
A count alleging that defendant with its engine wrongfully and negligently backed its cars over plaintiff put in issue the violation of Shannon's Code 1896, section 1574, subsec. 4, with reference to keeping a lookout ahead and sounding whistle, etc. when obstruction appears upon the track. (*Post, pp.* 494-501.)

Cases cited and approved: Railroad v. Pratt, 85 Tenn., 9; Railroad v. Davis, 104 Tenn., 442.

Codes cited and construed: Sec. 1574, subsec. 4. (S.1896).

2. RAILROADS. Injuries to person on track. Keeping lookout.
Shannon's Code 1896, section 1574, subsec. 4, requiring railroads to keep some person upon the locomotive always on the lookout ahead, cannot be complied with unless the engine is in front of the cars in the direction in which they are moving. (*Post, pp.* 501, 502.)

Cases cited and approved: Railway v. Wilson, 90 Tenn., 277; Railroad v. Pugh, 95 Tenn., 421; Railroad v. Dies, 98 Tenn., 660.

3. RAILROADS. Injuries to person on track. Keeping lookout.
The backing of a train in a switching movement in the railroad yards is not within Shannon's Code 1896, section 1574, susec. 4, with reference to keeping a lookout on the locomotive, etc. (*Post, pp.* 502-506.)

Cases cited and approved: Railroad v. Pugh, 95 Tenn., 421; King v. Railroad, 129 Tenn., 44; Railroad v. Robertson, 56 Tenn., 280; Cox v. Railroad, 1 Shan. Cas. 475; Patton v. Railroad, 89 Tenn., 377.

4. RAILROADS. Injuries to person on track. Duty of company.
As a railroad track is not constructed for a walkway for pedestrians, it is not ordinarily incumbent upon the company to keep its track in a safe condition for such purpose. (*Post, pp.* 506-509.)

Nashville, C. & St. L. Ry. v. Lovejoy.

Case cited and approved: Clapp v. LaGrill, 103 Tenn., 164.

Cases cited and distinguished: Clapp v. LaGrill, 103 Tenn., 164; Furey v. New York Central Railroad, 67 N. J. Law, 270; Richards v. Railroad, 81 Iowa, 426.

5. RAILROADS. Injuries to person on track. Invitation.

Without evidence of inducement or indication that the railroad was designed for persons to walk on, no invitation is shown by mere passive acquiescence or permission.  (*Post, pp.* 506-509.)

6. RAILROADS. Injuries to person on track.  Duty of company.

Where plaintiff employee of a coal company engaged in weighing cars at scales on defendant railroad's right of way in going from the scales to the office without invitation in preference to taking a path along the track walked upon the track, he was a mere "licensee," to whom defendant was not liable for any defect in the track.  (*Post, p.* 509.)

7. RAILROADS. Injuries to person on track.  Failure to signal.

Plaintiff employee of a coal company, engaged in weighing coal on defendant railroad's right of way, injured while walking on the track in going from the scales to the office cannot complain of the railroad's failure to signal, where he saw the train when it started to back in time to get out of the way, but for the fact that his foot was caught between a tie and switch rod, as the injury was not due to the failure to signal, but to the fact that plaintiff got his foot caught.  (*Post, pp.* 509-511.)

Case cited and approved: Railway v. Whitlock, 136 Tenn., 270.

FROM WHITE.

Appeal from the Circuit Court of White County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court—C. E. SNODGRASS, Judge.

CLAUDE WALLER and SMITH & HILL, for plaintiff.

ROBINSON & FANCHER, for defendant.

MR. EVANS, Special Judge, delivered the opinion of the Court.

This action was commenced in the circuit court of White county, by plaintiff, R. H. Lovejoy, against the Nashville, Chattanooga & St. Louis Railway Company, to recover damages for personal injuries. There was a judgment in the circuit court in favor of plaintiff for $8,000. The trial judge held, and accordingly charged the jury, that the railway company was required to observe the statutory precautions prescribed in section 1166, subsec. 5, of the Code, and brought forward in Shannon's Code, section 1574, subsec. 4. Upon appeal in error to the court of civil appeals, the judgment was reversed, and the cause remanded for a new trial. That court held that the statutory precautions had no application to the facts of this record, but remanded the case to be submitted to the jury under the principles of the common law. The case is now before us upon writs of *certiorari* granted both parties upon their respective petitions.

The declaration is in two counts. The first briefly alleged that defendant, within the town of Clifty, White county, Tenn., with its engine wrongfully and negligently backed its cars upon and over plaintiff, severely injuring him (setting out the injuries), wherefore he sues, etc. This was a count under the above-mentioned statute, putting in issue its violation. *Rail-*

*road* v. *Pratt,* 85 Tenn., 9, 1 S. W., 618; *Railroad* v. *Davis,* 104 Tenn., 442, 58 S. W., 296. And it was so treated by the parties both in the lower court and in this court. The second count was upon the facts of the case. It set out the facts in detail, and alleged certain acts of negligence upon the part of defendant.

The plaintiff, Lovejoy, was in the employ of the Clifty Consolidated Coal Company which operated coal mines in or near the town of Clifty, in White county, a mining town of six hundred or seven hundred inhabitants. He was run over by a caboose on one of the tracks of the railway company, his left foot seriously injured and his right leg so severely crushed that it became necessary to amputate it just above the knee.

It appears that the track upon which the injury occurred is a part of a branch line of the railway company running east from the town of Eastland, and terminating at or near the town of Clifty. Just a short distance before this line reaches the Clifty depot or station, it breaks into two separate tracks; one, known in the record as the south track, running by the Clifty depot or passenger station; and the other, known as the north track, running in a direction a little north of east, a distance of about a quarter of a mile to one of the coal mines, known as mine No. 1. So that the tracks as they exist in the town of Clifty somewhat resemble a large letter Y, the two prongs of the Y being the north track and the south track respectively, and the base line of the Y extending westward in the direction of Eastland. There is a switch stand located at the point where the line separates into the north

track and the south track, so that a train or engine
coming from the west may, by means of this switch,
enter either upon the north track, which leads to mine
No. 1, or upon the south track, which runs by the
Clifty depot or station.  The passenger trains entering
Clifty use exclusively the south track upon which the
passenger depot is located.  The following plat will
aid in understanding the location of the tracks:

The injury to plaintiff occurred on the north track. On this north track about five hundred feet east of the switch stand are located some railroad scales, constructed by the railway company and used for the purpose of weighing cars of coal. The track is so constructed at this point that two set of rails pass over these scales, one set being to a large extent within the other, the respective rails being only a few inches apart. And it is so arranged that one pair of rails bear down upon the machinery of the scales and are known as the live rails, while the other pair do not bear down upon the scales and are known as the dead rails. When it is desired to weigh a carload of coal, the car is run upon the live rails and placed upon the scales. When it is desired to run a car across that portion of the track without weighing it, the dead rails are used, which do not bear own upon the machinery of the scales. An engine cannot be run over the live rails, because it would damage the scales by reason of its weight.

These scales are thirty-eight feet long. About eighty-three feet west of the center of the scales on the north track is a scale switch by means of which cars going east on this track are switched either upon the deaa rails or the live rails, as desired. About eighty-three feet east of the scales is another scale switch used for similar purposes. The point at which plaintiff was injured was at the west scale switch.

Lovejoy was employed by the coal company as general bookkeeper, and in addition to his office work, it was his duty to weigh cars of coal when the cars were loaded and ready to be shipped by the coal company,

and his weights were accepted and used by the railway company. It appears that there was a mine operated by the company some distance east of the scales. The office of the company where the books were kept was south of the south track and a short distance east of the Clifty depot. As stated, the scales were on the north track, and in going from the office to the scales or from the scales to the office certain paths were used, but there was a low or marshy ground just south of the scales lying between them and the office, so that the path did not lie directly from the scales to the office. To avoid this marshy place, the route of travel led along the railroad track westwardly toward the main switch, until this low land had been passed, and thence southward to the office.

Plaintiff, Lovejoy, was walking on the north track, on his way from the scales to the office, after having weighed some cars of coal, when the caboose attached to a train of coal cars which had just been weighed, ran over and injured him. It appears that when cars loaded at the mine, east of the scales, are to be weighed, they are pulled down over this north track to a point west of the scales. The west scale switch is then turned so that the cars can be pushed back upon the pair of rails bearing upon the scales. As the cars, one by one, are placed upon the scales, they are weighed separately. After the cars have all been weighed, they are pulled westwardly again until all are past the west scale switch which is again turned.

On the occasion when the plaintiff was injured, he had just weighed six cars of coal. An engine was attached to the west end of the six cars and a caboose attached to the east end. Lovejoy had weighed the cars as it was his duty to do, and placed the weights of each respective car upon the slip bills, after which the cars had been pulled west of the scale switch and stopped.

In speaking of what occurred after the cars were weighed, plaintiff testified:

"As was the custom of myself and others that weighed coal there, I stepped out and walked up the scale and handed the bill to the trainman and walked up on the track with him and he got a little ahead of me. He was walking faster or trotting, as they do sometimes. The train pulled up above the other switch, he set that switch and ran around the end of the train, and as he got up even with the switch (scale switch) I noticed there was a brake valve at the end of the caboose leaking. I turned. . . . I may have been just a little beyond where the switch was. I noticed this leaky brake valve, and I turned in that direction. I noticed that the train was backing. At first I thought it was letting out the slack in the train, but I thought I had better get off the track, and when I went to get off I noticed my foot was hung and I tried to get it out and I couldn't. I don't know the exact distance the train was from me when I got hung, but it was something like half a car length probably, but I couldn't judge the distance because the train was rolling slowly all the time,

but I worked at my foot and tried to get it out, and in order to save my life I fell backwards across the track.''

Plaintiff testified that the wheels of the caboose passed over his right leg, but that the train was stopped before the adjoining car reached him. It appears that plaintiff's foot was caught in an opening or wedge-shaped space between the iron switch bar and a cross-tie, and became so firmly fastened that he could not loosen it.

At the time the coal cars were pulled off the scales, there was a passenger train standing upon the south track beside the Clifty depot, and was about ready to leave Clifty on its journey westward. When the coal cars had been pulled a sufficient distance on the north track for the caboose to clear the west scale switch, it was found that the engine had partially passed to the west of what is known as the clearance post, which was located a short distance east of the main switch stand where the north and south tracks separate from each other. It appears that if an engine on the north track extended west of this clearance post, a train on the south track traveling westward, would not clear it. The passenger train on this occasion had the right of way, and was getting ready to start, so that it became neces-sary to back the train of coal cars in order for the en-gine to clear the passenger train bound westward. The train of coal cars was therefore backed, and in the pro-cess of backing, the plaintiff was run over and injured.

There are two principal questions in the case: First, whether the statutory precautions apply; and, second,

if they do not apply, whether the question of liability should be submitted to the jury under the principles of the common law.

It is well settled that section 1574, subsec. 4, of Shannon's Code cannot be complied with unless the engine is in front of the cars in the direction in which they are moving. *Railway* v. *Wilson,* 90 Tenn., 277, 16 S. W., 613, 13 L. R. A., 364, 25 Am. St, Rep., 693; *Railroad* v. *Pugh,* 95 Tenn., 421, 32 S. W., 311; *Railroad* v. *Dies,* 98 Tenn., 660, 41 S. W.; 860. It appears that the operation of the train of coal cars on the occasion of the injury was the usual operation when a passenger train was standing upon the south track, having the right of way toward the west. In plaintiff's declaration, it was averred:

"Sometimes this train would pass on out over its main track, on its regular run, as soon as the coal was weighed. At other times it would back or stand upon the track after the coal was weighed until and in order that the passenger train could come in."

Referring to the north track as the main track, plaintiff testified:

"When the train runs off the scale track, they back when they get out on the main track so as to get out of the way of the passenger train, if they had a passenger train there."

There is considerable controversy in the record as to whether the north track or the south track was the main line; also as to whether the operation was a switching movement within the yards or depot grounds

of the company. The plaintiff says that he does not know whether "you would designate the place where the scale switch is as being in the yards of the company or not." Both the trial judge and the court of civil appeals found that the backing operation occurred within the railroad yards, and we think the evidence sustains that finding. The record shows that freight cars were permitted to run down westwardly from the mine and stand on the north track until desired to be used in making up trains. This track was not used at all by passenger trains.

We are of opinion that the backing of the train of coal cars in this case was a necessary switching movement in the railroad yards, within the meaning of our cases. *Railroad* v. *Pugh*, 95 Tenn., 421, 32 S. W., 311; *King* v. *Railroad*, 129 Tenn., 44, 164 S. W., 1181, 51 L. R. A. (N. S.), 618. We think it would be unreasonable and utterly impracticable to apply the statute to a movement of this kind, and to hold that this train of cars, after having been weighed and having been pulled off the scales, could not, without violating the statute, back even a few feet to clear the passenger train which was using the south track. It has been held by this court in a number of cases that the statute was not intended to apply to operations in which its application would be unreasonable, impossible, or utterly impracticable. *Railroad* v. *Robertson*, 9 Heisk., 280; *Cox* v. *Railroad*, 1 Shan. Cas., 475; *Patton* v. *Railroad*, 89 Tenn., 377, 15 S. W., 919, 12 L. R. A., 184; *Railroad* v. *Pugh*, 95 Tenn., 422, 32 S. W., 311; *King* v. *Railroad*. 129 Tenn., 44, 164

S. W., 1181, 51 L. R. A. (N. S.), 618. We therefore hold that the statute does not. and was not intended to, apply to this movement.

As above stated, the court of civil appeals reversed the judgment of the circuit court upon the ground that the statutory precautions had no application, but declined to hold that the motion of the railway company for a directed verdict should have been sustained, and remanded the case to be submitted to a jury under the principles of the common law. This action of the court of civil appeals in so remanding the case instead of dismissing it is assigned as error by the railway company; its contention being that under the averments of the declaration and the undisputed facts of the record the case is not one of liability at common law.

There are two acts of negligence averred in the declaration: First, that the switch rod and cross-tie were in a defective and dangerous condition by reason of which plaintiff's foot was caught; and, second, that it was negligent to back the train of cars without any warning or signal to plaintiff.

Upon the first ground of negligence, the declaration averred that plaintiff was in the employ of the Clifty Consolidated Coal Company; that it was his duty to weigh cars of coal when placed upon the railroad scales, and that his weights were accepted by the railway company; that the ground between the scales and the office was low and rough, and over which there was no passway upon which plaintiff could walk. The declaration then averred:

''The nearest and most convenient way to reach the said office, depot, and store, from the scales is to go west along the railroad for a distance of about seventy feet from the scales, where there is a path crossing the railroad and leading down the embankment, and thence to the office and depot. It was usual and customary for plaintiff and other weighers of coal to travel this route in going to and from the scales, and this path was also frequented, and had been for a number of years, by many others of the general public in crossing the railroad to the depot and to said office and store and to other points. Plaintiff and others weighing coal had traveled this passway for several years, and this was known by the defendant, its agents and employees, and acquiesced in by them.''

Plaintiff testified substantially to the above facts as alleged in the declaration. It further appears from the testimony of plaintiff and a number of other witnesses, and is a fact undisputed in the record, that there were two paths, one on each side of the north track, leading from the scales westwardly beyond the culvert, thence southwardly in the direction of the depot and office. That is to say, both these paths extended along the side of the railroad track the entire distance that plaintiff intended to walk before turning south from the track toward the office or depot. The path on the south side was narrow and somewhat sloping, but it was used as a pathway. That on the north side of the track was broad and level and an entirely safe place for walking. The question for determination upon this

feature of the case is whether under these facts and under the averments of the declaration the plaintiff, at the time he was injured, was walking upon the center of the track under an invitation express or implied from the railway company.

Plaintiff testified that a great many persons of the public used the path in the center of the track, and had done so for several years without objection from the railway company; but it must also be true that a great many persons used the paths on the north and south sides of the track; otherwise they would not have been paths. He further testified that the path on the south side of the track was narrow and sloping and not good walking; that "it is used as a pathway, and the train crew can walk along that path, and you can walk along that path, but it slants down and is very narrow there." With reference to the path on the north side, plaintiff stated:

"There is a broad place there on the north side. Along on that north side is where the switch signal is that extends across that place and breaks that path, and a person that walks along there would naturally step up on the track there. The switch extends out on the north side about six feet, and the rod is there that you turn that switch with; you would have to step over a place about that wide; there are two ties there. You couldn't step over that place as easy as you could step up on the track, over the track."

Plaintiff further testified:

"When I left the scales, the usual and customary way and best route to take was to pass along the track west to-a point where the path led off to these other points, and I was traveling along that way at the time I was injured."

A railroad track is not constructed as a walkway for pedestrians, and ordinarily it is not incumbent upon a railway company to keep its track in a safe condition for persons to walk upon. It has been said that a railroad track is in itself an admonition of danger. The fact that persons are accustomed to walk upon a railroad track with the mere passive acquiescence or permission of the railroad company is not sufficient to constitute an invitation. There must be some evidence of an inducement to use the way, on the part of the railway company; or there must be some indication that the place or way was designed by the railway company for persons to walk upon.

In *Clapp* v. *La Grill*, 103 Tenn., 164, 52 S. W., 134, after reviewing a number of cases upon this subject, this court said:

"In all these cases there was plainly an indication, more or less patent, that the way was designed for the use of the public, and the public was either expressly or by implication invited to enter upon and use it, and under such circumstances the cases are uniform that there is liability for injuries arising out of dangerous conditions existing on the premises. The doctrine is equally settled that when a person goes upon the premises of another without invitation, but simply as a

licensee, and owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a defect in the premises, the owner is not liable because the person has taken the risk upon himself."

In White on Personal Injuries on Railroads, section 865, the rule is thus stated:

"While the mere passive acquiescence of a railroad company in the use of its premises, such as a portion of the right of way along a railroad track, for public or private travel, does not impose upon the company the duty of providing against the dangers of accidents to those so using its property, yet, if the railroad company, directly or by implication, induces persons to enter upon and pass over its right of way, it thereby assumes, in law, the obligation of seeing that the same is reasonably safe for the use to which it appropriates it."

It has frequently been said that if the owner or occupant of lands by any "inducement, enticement, or allurement" causes others to come upon the same, he owes a duty to such persons to see that the premises are safe for that purpose. Elliott on Railroads (2 Ed.), section 1249, and cases cited.

There is nothing in the record to show that the center of this track was designed by the railway company as a walkway for the plaintiff or the public, or that the railway company in any manner induced the plaintiff or the public to walk thereon. The declaration does not allege that there was such design or such inducement upon the part of defendant, and the plaintiff

does not testify that he thought the track was intended for him to walk upon. The mere fact that he and others of the public had been in the habit of walking there, and that the railway company passively acquiesced therein, is not sufficient under the authorities. *Clapp* v. *La Grill,* supra.

In *Furey* v. *New York Central Railroad,* 67 N. J. Law, 270, 51 Atl., 505, the following statement of the law was approved.

"A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises he thereby assumes an obligation that they are in a safe condition, suitable to such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

And in *Richards* v. *Railroad,* 81 Iowa, 426, 47 N. W., 63, the court said:

"It may be conceded that there was evidence which tended to show that the defendant gave to the inhabitants of Elma license to cross its tracks south of the depot platform, and even that it invited them to do so by separating its cars for the purpose of removing obstructions to travel across the track; but there is no evidence to show that it invited people to walk along its tracks. The fact that it did not forbid their doing so cannot be given the force of an invitation."

There was no necessity for the plaintiff to use the track, because a safe walkway was provided for him

along the side of the track. It is true, as contended by learned counsel for plaintiff, that he was upon the scales by invitation of defendant, but in leaving the scales and in going to the office or depot, plaintiff had no right to go upon another portion of the premises, the railroad track, to use it for purposes for which it was not designed or intended. 29 Cyc., 452. The most that can be said, under the evidence in the record and the averments of the declaration, is that plaintiff used the track for his own convenience, and was at best a mere licensee. An owner of premises owes no duty to a bare licensee to keep them in safe condition. *Clapp* v. *La Grill,* 103 Tenn., 164, 52 S. W., 134; White on Personal Injuries on Railroads, section 862.

We are of opinion there was no invitation to plaintiff by the railway company to use the center of the track as a walkway, and that defendant was under no obligation to keep this track in a safe condition for plaintiff or other pedestrians to walk upon. This being true, defendant is not liable to plaintiff on account of any defect in the track by reason of which he got his foot caught between the switch bar and the cross-tie.

The second and only other act of negligence alleged in the declaration is that the defendant "negligently, without warning or signal to the plaintiff, backed the said train upon him." Upon this subject the plaintiff testified as follows:

"When I reached the switch I was walking between the rails, and I saw the cars start to roll back. I thought at first it was just the slack, as they had plenty

of room to clear the other track switch with six cars. When I saw them rolling back I turned and started to step off the track on the fireman's side, and I either stepped down between the tie and the switch rod or my foot slipped off and went down between them. I can't say which, and when my foot went down it caught, and I couldn't get it out.''

It therefore appears that the plaintiff saw the cars when they began to move backward. He says he does not know the exact distance the train was from him when his foot got hung, but that it was something like a half car length probably. It further appears from plaintiff's statement that he saw the cars begin to roll back, before his foot got hung, because he says that when he saw them rolling back, he turned and started to step off the track, and either stepped down between the tie and switch rod, or his foot slipped and went down between them. It is clear, therefore, that a signal or warning would not have given the plaintiff any more information than he testifies he actually had. He saw the train when it began to move. He was then a sufficient distance to get off the track, except that his foot got caught. The plaintiff, according to his own testimony, was familiar with the necessity of backing the cars, when a passenger train was at the depot, in order for them to get out of the way of the passenger train. The injury to plaintiff was clearly not due to the fact that no signal or warning was given when the train was backed, but was due to the fact that he got his foot caught and could not extricate it. No signal or warning

could have prevented his foot being caught. *Railway v. Whitlock,* 136 Tenn., 270, 188 S. W., 1151.

We are therefore of opinion that, under the averments of the declaration and under the facts disclosed by the record, plaintiff has no common-law cause of action against the railway company. The trial judge committed error in refusing to grant defendant's motion for a directed verdict, and the court of civil appeals was in error in not so holding. It results that both the judgments of the circuit court and that of the court of civil appeals will be reversed, and plaintiff's suit will be dismissed in this court.