CINCINNATI, N. O. & T. P. RY. CO. *v.* MINNIE SHARP,

(*Knoxville,* September Term, 1918.)

1. EASEMENTS. Ways. Over railroad right of way.

Whether a railroad company acquired its right of way by con-
demnation or deed is no ground for distinction in determining
whether a prescription way can be acquired over such right of
way, for, regardless of the mode of acquisition, a railroad com-
pany, under Shannon's Code, section 2413, holds property only
for railroad purposes. (*Post. p.* 150.)

Code cited and construed: Sec. 2413 (S.).

2. EASEMENTS. Rights of way. Prescriptive easements.

As a railroad holds its right of way for public purposes, a pre-
scriptive way over such right of way cannot be acquired. (*Post,
pp.* 150-152.)

Cases cited and approved: Railroad Co. v. Fort, 3 Tenn. Civ. App.,
723; Magill v. Railroad, 2 Tenn. Civ. App., 656; Railroad Co.
v. Telegraph Co., 101 Tenn., 62; L. & N. Railroad Co. v. Hagan,
141 Ky., 20; L. & N. Railroad Co. v. Childers, 155 Ky., 652.

3. EASEMENTS. Prescriptive ways. Property in possession of lessee.

Where a railroad company was in possession of a right of way as
lessee, no prescriptive way over such right of way could be ac-
quired, for the law will not presume a grant from the apparent
acquiescence of one who could not have made it. (*Post, pp.* 152,
153.)

Case cited and approved: McKinney v. Duncan, 121 Tenn., 269.

Case cited and distinguished: Sanders v. Simpson, 97 Tenn., 385

4. EASEMENTS. Right of way. Permissive use.

Where there was nothing to show that persons who used a path
over a railroad right of way for about twenty-five years, or the
public generally, did so under any claim of right adverse to the
owners of the right of way, no prescriptive easement resulted.
(*Post, pp.* 153, 154.)

C., N. O. & T. P. Ry. Co. v. Sharp.

Cases cited and approved: Sharp v. Mynatt, 69 Tenn., 375; McKinney v. Duncan, 121 Tenn., 265.

5. **APPEAL AND ERROR.** Change of. Theory on appeal.

Where plaintiff was injured when she stumbled over lumber placed on a railroad right of way in such a manner that it obstructed an established path thereon, *held* that, where plaintiff relied on a prescriptive way, she could not on appeal change to the theory that a landowner, who expressly or by implication invites the public to come upon his land or use it as a pathway, cannot permit a snare or danger to exist thereon which results in injury to the person who accepts the invitation. (*Post, pp.* 154, 155.)

Case cited and approved:  Connor v. Frierson, 98 Tenn., 183.

Case cited and distinguished:  Clapp v. La Grill, 103 Tenn., 170.

---

### FROM MORGAN.

---

Appeal from the Criminal Court of Morgan County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Xen Hicks, Judge.

Carr & Morris, for appellant.

Davis, Davis & Jones, W. Y. Boswell and D. W. Byrge, for appellee.

Mr. Justice McKinney delivered the opinion of the Court.

This is a suit for damages for personal injuries. A verdict of $1,000 was rendered by the jury, upon which judgment was entered, and on appeal this judgment was

affirmed by the court of civil appeals, and the case has been brought here by certiorari.

The residence of the defendant in error was in about ten feet of the right of way of the railroad operated by the plaintiff in error, and was located in a deep hollow in the town of Oakdale, and went by the name of the Southern Hotel. This building was erected about the year 1891, and for some time thereafter was used as a saloon, and later as a negro tenement, and has maintained somewhat of an unsavory reputation.

In getting from said building to the public road, the defendant in error traveled a winding path across the right of way of said railroad company. Said path was very steep and rough. This building has been owned by one James Wilson for about seven years, and the defendant in error had lived in said house for something over a year prior to the time of the accident complained of. Since the erection of said building those occupying the building, as well as people going to and from same, have used this pathway across the railroad right of way, and this has been something like twenty-five years.

At the time of the injury the defendant in error was employed as a house servant by a Mrs. Waddell, receiving as wages $2.50 per week and her meals. She left her home early every morning and usually returned after night. There was another way she could have traveled without crossing said right of way, but it was about two hundred steps further.

In the spring of 1916, the railroad company began the erection of a large water tank on its right of way and near to the residence of the defendant in error.

For several days prior to the accident it had been un-
loading lumber and gravel on its right of way, in front
of the residence of the defendant in error, but not upon
or across said pathway; said lumber, gravel, and other
material to be used in the erection of said water tank.

On the morning of the 3d day of May, 1916, defend-
ant in error went to her work as usual, and there was
no obstruction upon or across said path at that time.
When she returned that night it was very dark, so much
so that she could scarcely see anything at all, and in
passing along said pathway she stumbled over some
lumber that had been placed across said pathway dur-
ing the day, and was precipitated down the steep em-
bankment, in front of her house, and over which said
pathway extends, resulting in serious injury, to recover
damages for which this action was brought. The decla-
ration contains the following averment, upon which the
right to recover in this case is predicated:

"The plaintiff alleges and avers that the roads which
lead to and from her residence are both public and pri-
vate roads leading to and from her residence; that
said roads have been used by the public generally for
a period of more than twenty years, and that the de-
fendant knew that said roads were being used by the
public generally, and by those who have from time to
time occupied the property known as the Southern Ho-
tel; and plaintiff alleges and avers that the defendant
has for more than twenty years acquiesced in the public
using said road as a public road, and in the use of said
road by the people who have occupied said house known
as the Southern Hotel; said occupants using said roads

in order to gain ingress and egress to and from said property.''

The theory of the plaintiff below was that she and the public generally had acquired a prescriptive right in this pathway, and that the defendant, by obstructing same, became liable for the injury resulting therefrom.

The circuit judge charged the jury that the public could not acquire any prescriptive right in such right of way, where the railroad company acquired same by grant or by condemnation proceedings, but that the public could acquire such right when the property had been acquired by warranty deed conveying the fee, and where the provision of the instrument did not limit the estate transferred to railroad purposes.

The attorneys have not cited any authority in support of this holding of the learned circuit judge, and we have been uable, either upon principle or authority, to sustain such a distinction. Railroads in this state cannot hold real property for other than railroad purposes.

Shannon's Code, section 2413, provides that railroads shall have power to purchase and hold, or to receive by gift, or to acquire by condemnation, real estate for corporation purposes; so that, regardless of the manner in which it is acquired, the railroad only holds it for railroad purposes, and in the numerous authorities which we have examined we do not find a single case where such a distinction is drawn, as was done by the learned circuit judge in this case.

There seem to be two lines of authorities on this question, one holding that such prescriptive right can be acquired, and the other that such right cannot be

acquired, in the railroad right of way; and in those cases holding such right can be acquired, the courts say that such use will be held to be permissive, and not adverse, in the absence of strong evidence to the contrary. The great weight of authority seems to be opposed to such right, and such has been the holding of our courts. *Railroad Co.* v. *Fort,* 3 Tenn. Civ. App., 723; *Magill* v. *Railroad,* 2 Tenn. Civ. App., 656; *Railroad Co.* v. *Telegraph Co.,* 101 Tenn., 62, 46 S. W., 571, 41 L. R. A., 403.

The principle upon which the courts hold that such right cannot be acquired in the right of way of the railroad is stated in *L. & N. Railroad Co.* v. *Hagan,* 141 Ky., 20, 131 S. W., 1018, 35 L. R. A. (N. S.), 189, which was a case where a passway was claimed along and across the right of way, and had been used without question for thirty or thirty-five years. The court, denying the right to such passway, said:

"There is necessarily a distinction between a railroad right of way and the property of a private person as to the presumption of a grant. A private person holds his land for his private purposes. The railroad holds its right of way for public purposes. When a railroad has taken a right of way, either by condemnation or by purchase, on the ground that it is necessary for the business of the road, it is not presumed that it has granted to others property that was acquired for public purposes. It is a matter of common knowledge that in this country persons walk over and along railroad tracks at many points, and that the railroads permit this so long as it does interfere with their business. But this

merely permissive use of their rights of way and tracks gives such persons no legal right to a passway over them.''

In a note to this case the authorities on this question are fully annotated. It will be noticed that in this case no distinction is made between property purchased and property condemned by the railroad.

The latest case we have found on this question is that of *L. & N. Railroad Co.* v. *Childers,* 155 Ky., 652, 160 S. W., 260, 48 L. R. A. (N. S.), 903,. and note. There the public had used a pathway across the railroad right of way for more than thirty years in going to and from a hotel on the opposite side of the track. It was held that there was no· prescriptive right. The record does not show what kind of a title the railroad had to the property.

However, the distinction made by the learned circuit judge does not arise in this case, for the reason that the plaintiff in error does not own the fee in this right of way, and the court was in error in so instructing the jury. The deed referred to was executed to the trustees of the Cincinnati Southern Railway, and the agreement of the parties, found on page 52 of the transcript, shows that the plaintiff in error is the lessee of the Cincinnati Southern Railway, and, since said lease is ·not made a part of the record, we do not know what interest plaintiff in error acquired under said lease, but we do know that it could not be a fee-simple estate.

In *McKinney* v. *Duncan,* 121 Tenn., 269, 118 S. W., 684, the court quotes approvingly from *Sanders* v. *Simpson,* 97 Tenn:., 385, 37 S. W., 195, as follows:

"To give user this effect [prescriptive right] it must be uninterrupted in the land of another by the acquiescence of the owner for a period of at least twenty years under an adverse claim of right, while all persons concerned in the estate in or out of which it is derived are free from disability to resist it, and are seized of the same in fee and in possession during the requisite period. Where all these circumstances concur, it raises *prima-facie* evidence of a right to such easement acquired by a grant which is now lost. Thus there may be two distinct estates, and the owner of the one may have claimed and exercised the right of passing over the other for a period of time ordinarily requisite to give a right of way, but would fail thereby to create a presumption of a grant, if the servient estate during that period, or any considerable part of it, had belonged to a minor, or was in possession of a lessee, or one under a disability, like a married woman. The law would never presume a grant from the apparent acquiescence of one who could not have made it, or had no right to oppose the user from which it was sought to be inferred."

However, treating the plaintiff in error as an individual, we do not find any evidence in the record to support the claim of the defendant in error, for there is absolutely nothing to show that the use of this pathway, either by defendant in error, or by any one else, or by the public generally, was under any claim or right adverse to the owners of the property. We simply have a record showing that this pathway has been used for about twenty-five years by people in going to

and from said Southern Hotel building, and this is not sufficient under our authorities to even establish a prescriptive right as between private property holders. *Sharp* v. *Mynatt,* 1 Lea, 375; *McKinney* v. *Duncan,* 121 Tenn., 265, 118 S. W., 683.

We are therefore of the opinion that no prescriptive right had been acquired by the defendant in error, or by the public in general, in this pathway, and the circuit judge should have sustained the motion of the plaintiff in error for a directed verdict. The defendant in error was a mere licensee, and the plaintiff in error was under no obligation to keep said pathway unobstructed.

In disposing of the case in the court of civil appeals, that court held that it was not necessary for it to decide the question of prescriptive right, for the reason that the principle of the "trap" doctrine applied, and justified the recovery adjudged in the circuit court. In support of this doctrine the court of civil appeals quotes from the case of *Clapp* v. *La Grill,* 103 Tenn., 170, 52 S. W. 135, as follows:

"We think it clear that when the owner of land, expressly or by implication, invites the public, or third person, to come upon his land or use it as a passway, he cannot permit a snare or danger to exist thereon which results in injury to the person who accepts the invitation, and who, at the time, is exercising ordinary care, without being answerable for the injury."

We do not think the principle of the "trap" doctrine is involved in this case. No such issue was tendered in the pleadings, or raised on the trial in the lower court, or suggested by any of the assignments of error, or

even hinted at in the brief of the able attorneys representing the defendant in error.

The "trap" doctrine theory, as will be seen from a perusal of the case of *Clapp* v. *La Grill*, supra, is based upon the use of the property by invitation of the owner, while the doctrine of prescriptive right is based upon a right or use adverse to the owner. *Connor* v. *Frierson*, 98 Tenn., 183, 38 S. W., 1031; 14 Cyc., 1150. And in order to create a prescriptive right or easement the use must not be permissive. 14 Cyc., 1151.

So that the two doctrines are absolutely inconsistent and cannot stand together. The defendant in error alleged in her declaration that she used this pathway under a claim of right and adversely to the plaintiff in error. Therefore she cannot come now and say that she was an invitee, and, for that reason, the plaintiff in error owed her and the public in general the duty of keeping said pathway unobstructed.

We are therefore of the opinion that the judgment of the court of civil appeals and of the circuit court is erroneous, the same is reversed, and the suit of the defendant in error is dismissed, and she will pay the costs accrued in the several courts.