## SUMMERS v. LINX et al.

Middle Section. December 8, 1934.

Petition for Certiorari denied by Supreme Court, March 19, 1935.

W. B. Marr and Jesse W. Sparks, both of Nashville, for complainant.

Harry A. Luck and Littell Rust, both of Nashville, for defendants.

DeWITT, J. The question presented on this appeal is whether or not complainant M. W. Summers is entitled to rescission of a deed dated March 16, 1931, by which A. J. Linx and Littell Rust conveyed to him a lot described as follows:

"Land in Davidson County, Tennessee, being lot No. 1 on the map of Madison Commerce Center Subdivision, as of record in Book 547, page 130 of the Register's Office for said county.

"Said lot No. 1 fronts 95 feet, 9 inches on the northerly side of Sweetbrier Avenue and runs back 47 feet, 8 inches on the easterly side and 76 feet on the westerly side, with a strip reserved for a

sidewalk adjoining the Nashville-Gallatin interurban right of way to a dead line, and measures 73 feet, 5 inches thereon.''

This property is located at the northeast corner of the Jackson Highway and the Old Hickory boulevard, and it was purchased by Summers for the purpose of maintaining thereon a filling station and a restaurant; and this has been done. The consideration was $10,001, of which $1 was recited as paid in cash, and for the remainder Summers executed two notes for $2,500 each, due March 16, 1936, with interest, specified as a first lien on the property; and 100 notes for $62.50 each, payable monthly with interest. Summers made certain improvements on the lot and leased it for a rental of $60 per month, which by agreement was to be applied on the purchase-money notes, but for some reason this was not done before the receiver was appointed in this cause. Summers has paid only three of the notes for $62.50 each, and nothing more. He having become delinquent in the autumn of 1931, the holders of the notes were preparing to advertise and sell the property under the terms and provisions of the deed, whereupon, on December 8, 1931, Summers filed the bill in this cause against Linx, Rust, Raleigh Smith, and the Commerce Union Bank, supposed to be the holders of all the notes, to rescind the deed for fraud in the procurement of the trade, and especially in misrepresentation that there was a strip of land 10 feet wide lying between the westerly line of said lot and the right of way of the Interurban Railway Company, which was reserved for a sidewalk. All of said charges were vigorously denied by the defendants who were charged with such fraud. The defendants Linx and Rust filed separate answers and cross-bill, not only denying these charges and alleging that the complainant had thus purchased a corner lot as he desired and that the 10-foot strip existed west of the line of his lot, but also prayed for a receiver of the property and for a decree authorizing the trustee named in the deed, which was an installment deed with a power of sale, to sell said property in accordance with the terms of the deed because of default in the payment of the purchase-money notes. The Commerce Union Bank is the holder of the remaining 97 monthly payment notes as collateral for a loan.

On January 8, 1932, the chancellor appointed the clerk and master as receiver of the property to collect the rents and hold them pending the cause. This cause was finally heard on January 9, 1934, upon a full record. The chancellor found that the defendants Linx and Rust had practiced no fraud upon the complainant in the sale and conveyance of the property; and that the complainant had made default in payment of several of the notes; that the lawful owners and holders of the notes had declared all remaining unpaid notes due and payable in accordance with the provisions of the deed, he dismissed the original bill, and he authorized and empowered

Chas. F. Lovell, the trustee named in the deed, to advertise and sell the property in accordance with its provisions and report his action to the court for confirmation. He continued the receivership pending the determination of this cause on appeal. This is the present status of this controversy and of this property, for the complainant appealed to this court from the decree of the chancellor, having taken the oath in forma pauperis.

From a careful examination of this record we concur with the chancellor in finding that the defendants Linx and Rust practiced no fraud upon the complainant. We deem it unnecessary to go into this matter in detail. The complainant in his bill and in his testimony made many statements as to fraudulent practices or misrepresentations made to him, but these were denied by Linx and Rust, and they are not sustained by the preponderance of the evidence. Many of these things, if true, would not entitle the complainant to any relief, as they related to the condition of the property with which the complainant was just as familiar as were these defendants. The only question is whether or not the complainant would be entitled to a rescission on the ground that between the westerly line of the lot and the Interurban Railway Company's right of way there was no strip 10 feet wide reserved for a sidewalk. The complainant insists that he did not get a corner lot as he understood it was, and that such strip 10 feet wide adjoining his lot was of very great value for approach to and exit from his restaurant and the filling station on the part of customers.

It will be noticed that the deed does not specify a strip 10 feet wide reserved for a sidewalk, but merely a strip reserved for a sidewalk. However, the plan with reference to which the lot was sold, recorded in the register's office, and which was made by Earle Drake, a surveyor, does show a strip 10 feet wide west of the line of this lot, reserved for a sidewalk. It fairly appears that when Mr. Drake made the survey and the plat in 1926 he found an old fence running along a line 10 feet west of the westerly line of this lot, and after some examination and measurements he concluded that this fence was on the eastern margin of the Interurban Railway Company's right of way. This was evidently a mistake, for that would leave a width of only 25 feet in said right of way instead of 35 feet, which was the true width. It appears that the right of way really extended about to or coincident with the westerly line of this lot involved in this cause, so that, unless some agreement or transaction should be had to acquire this 10-foot strip for the owner of the lot, the strip would not be available for purposes of sidewalk. However, it does appear that the complainant or his lessee used this space as a means of approach and exit for customers without any interference, and that complaint was not actually damaged. The fence had been taken away and the space

was open. However, it appears from the testimony of Mr. Chas. U. Coggin, who had owned an interest with Linx and Rust in this transaction, that when some controversy came up between the Interurban Railway Company and himself as to the strip in question, an agreement was reached between him as representing the owners of the lot and the Interurban Railway Company whereby the 10-foot strip was definitely established to be used for sidewalk purposes along the western margin of the lot; that it was set apart as a safety zone and sidewalk by placing locust posts set in concrete for a chain connecting them. The complainant had the use of this space without interference, with the only exception that the railway company objected to his placing signs on the sidewalk, as it had a right to do, for sidewalks, especially those adjacent to railways, are not supposed to contain signs.

 It seems to us that this agreement between the railway company and the representative of the owners of the lot setting apart and definitely marking the line of the strip was a full compliance with the provisions of the deed, satisfying the description of reservation of a strip on the westerly side of the lot for a sidewalk. But there is another element that should also be taken into consideration. It appears that the right of way, 35 feet wide, has been totally abandoned as such by the railway company, and its ties and tracks have been removed. It had been acquired in 1911 by deed from J. M. Lanier as ''a right of way on which to construct and operate an electric car line upon and through the tract of land owned by us in the Eleventh Civil District of Davidson County, Tennessee.'' After describing the tract of 3 acres over which the right of way should run, the deed further recites: ''Said right of way consists of a strip running through the tract, parallel with Gallatin Pike and extending thirty-five feet from the east boundary line of said Pike, as the same is now located by H. H. Mayberry engineers, reference hereby being made to the survey and maps of said survey for definite description of said line.''

It appears that by deed dated September 28, 1926, G. A. Burroughs and his wife conveyed to A. J. Linx a tract of land including the lot involved in this cause, describing it as beginning in the center of Gallatin Pike and running eastwardly therefrom, but ''also included in the above description, but excluded from this conveyance is a thirty-five foot right of way described in deed to right of way recorded in Book 409, page 247 of the Register's Office for Davidson County, Tennessee.''

 The grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor. Knoxville v. Phillips, 162 Tenn., 328, 36 S. W. (2d), 434; N., C. & St. L. Ry. v. Bell, 162 Tenn., 661, 39 S. W. (2d), 1026; C., N. O. & T. P. Ry. v. Sharp, 141 Tenn., 146, 207 S. W., 728; Ill. Cent. Rail-

road Co. v. West Telephone Co., 135 Tenn., 198, 199, 186 S. W., 90. And such right of way or easement may be lost by abandonment. McLemore v. Railroad, 111 Tenn., 639, 69 S. W., 338.

█ Therefore, the deed of Burroughs to Linx, excluding only the right of way, or easement, on its face operated to convey the fee to the land covered by the easement. The easement has been lost by abandonment. Consequently, the deed from Linx and Rust to the complainant operated as a valid setting apart, or reservation, of the 10-foot strip for use as a sidewalk. Thus the complainant has what he bargained for. Prior to the abandonment he suffered no interference with his legitimate use of the strip as a sidewalk.

The record shows no ground entitling the complainant to a rescission. The decree of the chancery court is affirmed at the cost of the complainant. The cause will be remanded to that court for all necessary proceedings consistent with the result so reached.