FRANK A. NORRIS, administrator, *vs.* HUGH NAWN CONTRACTING COMPANY.

Suffolk.     March 15, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence*, Licensee, Invitation, In a quarry.     *Agency*, Scope of authority.

The proprietor of a quarry, who maintains a derrick, owes no duty to one who is walking through the quarry as a mere licensee to keep the derrick in such a condition that it will not fall upon him from an accident, not due to wanton recklessness, when he is passing near it.

If a newsboy goes to a quarry for the purpose of selling newspapers in his own interest and that of his employer, and is allowed to go there for this purpose but is not asked to go, he is only a licensee, who takes the risk of such dangers as exist there from the condition of the place and the methods of carrying on business, even though the business is conducted negligently.

The sale of newspapers to the workmen in a quarry, or to the engineer and the foreman of the quarry, has no connection with the business of quarrying stone, and if the foreman of a quarry asks a newsboy to go to the quarry to sell papers to him and to the workmen in the quarry, this in effect is nothing more

than a license, because the foreman, who has authority to direct the work at the quarry, has no implied authority to invite a newsboy to come into the quarry to sell papers.

TORT by the administrator of the estate of Ralph E. Norris, who was the son of the plaintiff, for causing the death of the plaintiff's intestate by the falling of a derrick upon him, when he had gone into the quarry of the defendant between Paul Gore Street and Boylston Street in that part of Boston called Jamaica Plain on January 18, 1906.   Writ dated July 11, 1906.

At the trial in the Superior Court *Hitchcock*, J., ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*A. T. Smith*, for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

KNOWLTON, C. J.   This is an action of tort to recover for the death of the plaintiff's son by the fall of a derrick in the defendant's quarry.   The deceased was a newsboy nearly fourteen years of age, and he had been engaged in delivering and selling papers not long before the accident, which happened at twenty-five minutes past seven o'clock in the morning.

We will assume in favor of the plaintiff that there was sufficient evidence to entitle him to go to the jury on the questions whether his intestate was in the exercise of due care and whether the fall of the derrick resulted from a defect which might have been discovered by the exercise of reasonable care and diligence on the part of the defendant's servants.

There was a driveway which passed into the quarry from Paul Gore Street, and around a stone crusher near the street, and out into the street again over a part of the same road.   It was four hundred to five hundred feet from this street across the quarry to Boylston Street.   It was in dispute whether there was a path leading from the road, near the stone crusher, across the ledge to Boylston Street; but it appeared that workmen on the quarry and other persons sometimes walked there, and the plaintiff's intestate was walking in this course when the derrick fell upon him.   There was evidence from different witnesses that there were signs put up in that part of the quarry, on which were the words, " No Trespassing."   The most that could be contended in favor of the plaintiff, on the question whether this was a way for the use of the public, was that persons were permitted to go

there as licensees. *Moffatt* v. *Kenny*, 174 Mass. 311. *Bowler* v. *Pacific Mills*, 200 Mass. 364. If the plaintiff was walking through the quarry merely as a licensee, the defendant owed him no duty to keep its derrick safe, so that he might not be injured by its fall from an accident. See cases cited above.

The plaintiff contends that his intestate was walking there by invitation, for the purpose of selling newspapers to the workmen on the quarry. Upon this branch of the case the evidence relied on by the plaintiff came almost entirely from witnesses who testified to the boy's previous declarations. There was testimony from his employer, a news agent, that the engineer who was employed at the engine house, which was just by the road to the stone crusher, about fifty feet from Paul Gore Street, was the only regular customer that he had on the ledge, that he had a book containing a list of the regular customers on the route, and that Ralph, the deceased, had a copy of it called the "route book," and that it was Ralph's custom to collect money weekly from the engineer. He also gave testimony tending to show that the deceased sometimes sold papers to other workmen in the quarry. He said "that Ralph came to him one morning and said that he was going to sell papers in the quarry; that he said to Ralph, 'They will not let you'; and Ralph said, 'Well, the boss of the quarry has asked me to go and sell him papers and to sell papers in the quarry, as the workmen desire it'; that after that conversation Ralph went upon that route."

The plaintiff testified that his son told him that he had two regular customers at the ledge, the engineer and the foreman; also that he sold papers to other men working on the ledge. The foreman's office was between the engine house at the driveway and Paul Gore Street. The foreman denied that he bought papers of the plaintiff's intestate, and said that he "told him to get away from there, that it was no place for him to be."

If he went upon the ledge simply for the purpose of selling papers in his own interest and that of his employer, he would be only a licensee, who would take the risk of such dangers as existed there from the condition of the place and the methods of carrying on business, whether the business was conducted carefully or negligently.

The law as to persons entering upon land by invitation was

much considered in *Plummer* v. *Dill*, 156 Mass. 426, and *Hart* v. *Cole*, 156 Mass. 475.   In the former of these cases it is said that, "To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there.   There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant."   In order to constitute an implied invitation, within the meaning of the rule that imposes an obligation to have premises reasonably safe for an invited person, the purpose of such a person in going there must have a direct connection with the business actually or apparently carried on there.   The business carried on at this place was quarrying stone.   The sale of newspapers to workmen, even to an engineer or foreman, had no connection with the business.   If it could be said that there was an invitation to come and sell a paper to the engineer or to the foreman, this involved going but a few steps along the driveway from the street, and it was not an invitation to pass over the ledge and along by the derrick.   Apart from the single sentence quoted from the statement of what the boy once told his employer, there is not a word of testimony in the case tending to show that his selling of papers to workmen in the quarry, if he sold any, was by authority or permission of the foreman.   If it was true that "the boss of the quarry" asked him "to go and sell him papers and to sell papers in the quarry," there was no evidence that this was anything more than a license to do that which had no relation to the business for which the place was being used.   If the language can be treated as a request, or an express invitation, it was not an invitation in law, within the principles stated in *Plummer* v. *Dill*, *ubi supra*.   There is no evidence that the foreman of the quarry had authority, as affecting in any way the defendant's business or the defendant's interests, to invite a newsboy to come into the quarry and go about among the workmen in working hours, selling papers.   This could have no tendency to forward the business or promote the interests of the defendant.   If the foreman did this, the only reasonable inference is that he did it merely as permission to the boy, to enable him to make a profit on the

sales, and perhaps in part to indulge some workman in a personal wish which had no relation to the business carried on by the defendant.

We are of opinion that there was no evidence that the defendant owed the plaintiff's intestate any duty to have the ground or the derrick safe, so that he could pass through the quarry without risk of injury.

*Exceptions overruled.*