EMMA J. HESKELL, as Administratrix of the Estate of
FRANK HESKELL, Deceased, Respondent, *v.* AUBURN
LIGHT, HEAT AND POWER COMPANY, Appellant.

Negligence — licensees — liability and duty of owner to licen-
sees — telephone company using, as a mere licensee, the pole of
an electric light company to sustain telephone wires — employee
of telephone company killed by current of electricity from tele-
phone wires charged with heavy current from defectively insu-
lated electric light wire — when electric light company not liable.

1. The law recognizes two classes of licensees; the one class con-
sists of those who act upon the invitation, express or implied, or the
inducement of the owner or who necessarily enter on business with
him, or in the discharge of a public or private duty; the other con-
sists of those who act voluntarily, without invitation, express or
implied, or inducement from the owner or not through a private
or public duty. The duty of the owner to either class differs fun-
damentally from that to the other, and as to each it is clearly
established and prescribed.

2. To come under an implied invitation, as distinguished from a
mere license, a visitor must come for a purpose connected with the
business in which the occupant is engaged, or which he permits to
be carried on there. There must at least be some mutuality
of interest in the subject to which the visitor's business relates,
although the particular thing which is the object of the visit may
not be for the benefit of the occupant.

3. The death of the plaintiff's intestate resulted from his contact
with an electrically charged wire belonging to the defendant while
upon one of its poles. The intestate was not an employee of or
connected with the defendant, but was an employee of a telephone
company, two of whose wires were fixed to the pole at its top and
above the crossarms which supported defendant's wires. The tele-
phone wires were fixed to the pole of defendant without any
arrangement or agreement between the companies or specific con-
sent on the part of the defendant. The intestate received the shock
from which his death resulted through contact with a defectively
insulated part or the dangerous position of one of defendant's wires.
*Held*, that in using the pole the telephone company and its
employees were mere volunteers or naked licensees who used the

pole subject to all the concomitant conditions and perils and to whom the sole duty of the defendant was abstention from inflicting intentional or wanton or willful injury, and since there was on the part of the defendant no act of affirmative, intentional or willful misfeasance, fault or wrong, plaintiff cannot recover. (*Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484, distinguished.)

*Heskell* v. *Auburn Light, Heat & Power Co.*, 152 App. Div. 902, reversed.

(Argued April 25, 1913; decided June 17, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial depertment, entered July 15, 1912, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Harding* for appellant. The deceased was a trespasser, or, at best, a bare licensee upon defendant's pole, and the defendant owed him no duty to keep the wires near the top of the pole insulated or to use any particular method of construction. (*Hickok* v. *Auburn L., H. & P. Co.*, 200 N. Y. 464; *Freeman* v. *Brooklyn Heights Ry. Co.*, 54 App. Div. 596; *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240; *Hector* v. *Boston El. L. Co.*, 161 Mass. 550; *Sias* v. *Lowell, etc., St. Ry. Co.*, 179 Mass. 343; *Birch* v. *City of New York*, 190 N. Y. 397; *Augusta Railway Co.* v. *Andrews*, 89 Ga. 653; *Downes* v. *Elmira Bridge Co.*, 179 N. Y. 136; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Nicholson* v. *Erie R. R. Co.*, 41 N. Y. 525; *Racine* v. *Morris*, 136 App. Div. 467; *McAlpin* v. *Powell*, 70 N. Y. 126; *Splittorf* v. *State of New York*, 108 N. Y. 205.)

*A. Lee Olmsted* for respondent. The jury having found upon sufficient evidence that plaintiff's intestate was not a trespasser or a bare licensee upon the pole, and that the

circumstances were such that the defendant ought to have anticipated that he and his co-employees would from time to time go upon this pole in the discharge of their duties, it became the duty of the defendant to construct and maintain its dangerous wires on the pole in such a manner as to render the pole as free from danger as it could be made by the exercise of reasonable care in adopting those safeguards and methods of construction which are in common use. (*Brown* v. *Buffalo G. E. Co.*, 200 N. Y. 484; *Caruso* v. *Troy Gas Co.*, 153 App. Div. 431; *Payne* v. *Electric Illuminating & Power Co.*, 64 App. Div. 477; *Dwyer* v. *Buffalo General Electric Co.*, 20 App. Div. 124; *Caglione* v. *Mt. Morris Electric Light Co.*, 56 App. Div. 191; *Wagner* v. *Brooklyn Heights R. R. Co.*, 69 App. Div. 349; *Horning* v. *Hudson River Tel. Co.*, 111 App. Div. 122; 186 N. Y. 552; *Illingsworth* v. *Boston Electric Light Co.*, 161 Mass. 583; *Griffin* v. *United Electric Light Co.*, 164 Mass. 492; *Rowe* v. *Taylorville Electric Co.*, 213 Ill. 318.)

COLLIN, J.   The death of the plaintiff's intestate resulted from his contact with an electrically charged wire belonging to the defendant while upon one of its poles.   The action is to recover the damages sustained by reason of the death.   Inasmuch as the decision of the Appellate Division was not unanimous, we must ascertain by a scrutiny of the evidence whether or not there was any proof permitting the jury to return a verdict in favor of the plaintiff.   If there was no evidence that tended to support the verdict the submission of the case to the jury was error.   (*Hickok* v. *Auburn Light, H. & P. Co.*, 200 N. Y. 464; *King* v. *Village of Fort Ann*, 180 N. Y. 496.)

Under the evidence, and the charge to them, the jury might have found as the facts most favorable to the plaintiff: The pole stood in a street of the city of Auburn, and belonged to and was used by the defendant to support its wires in its business of furnishing electricity for

light, heat and power. The wires were upon crossarms affixed to it, and carried powerful and dangerous currents of electricity. The intestate was not an employee of or connected with the defendant. He was an employee of the Auburn Telephone Company, two of whose wires were fixed to the pole at its very top and, therefore, above the crossarms which supported defendant's wires. On the date of the accident, May 20, 1911, the intestate was directed by the telephone company to ascertain and report to it what was to be done to remedy a reported defective condition of the telephone wires and he came in contact with the wire while he was executing the direction. The telephone wires were exended to defendant's pole from a pole of the telephone company which was located across the street from it and was a part of the telephone system. They passed from defendant's pole downward at an angle with it into a building. They were fixed to the pole of defendant without any express arrangement or agreement between the companies or specific consent on the part of the defendant. The defendant through a long time prior to the accident knew of and passively acquiesced in this location of the telephone wires. The intestate received the shock from which his death resulted through contact with a defectively insulated part or the dangerous position of one of defendant's wires.

The trial justice denied the motions of the defendant that the plaintiff be nonsuited, and that a verdict in its favor be directed, and submitted the case to the jury upon the theory that if they found the defendant knew that the wires of the telephone company were on its pole and acquiesced in their remaining there until further notice, and that the linemen of the telephone company would have to go up the pole from time to time, the duty of the defendant toward those linemen, as toward its own employees, was to render the situation on the pole as free from danger as it could be made by the exercise of reasonable prudence in adopting those safeguards which experi-

ence had shown would lessen the dangers that otherwise would be present, and if the defendant neglected to fulfill that duty and the intestate was not guilty of contributory negligence the plaintiff was entitled to their verdict.

The facts which the jury found, as the evidence and the charge permitted, did not justify the submission to them or support the verdict. The pole was the private property of the defendant, which, although it was within the street, had the right, inherent in ownership, to exclusively possess, use and control it. The telephone company was not by virtue of any arrangement or agreement with the defendant the transferee or possessor of any fraction of that right. It in the original fastening of the wires to the pole was, as to the defendant, a trespasser, and the termination of that relation, and the rise of another could be found only through implication in the silent assent of the defendant to its action. It ceased being a trespasser because, under the verdict of the jury, the attitude of the defendant toward it in regard to the use of the pole was not hostile or prohibitive and was tacitly and impliedly permissive and acquiescent. It did not acquire any legal right to go upon or use the pole. The sufferance and acquiescence of the defendant implied its permission and permission involves a license, but it created no right and the defendant could at any moment have forbidden the telephone company the further use for any purpose. Under the facts as found, the relation of the telephone company to the defendant was that of a licensee as to the purposes for which it used the pole. (*Nicholson* v. *Erie Railway Co.*, 41 N. Y. 525.)

Common apprehension, sound reasoning and legal principles have defined or recognized two classes in those who, as licensees, enter upon and use the property of others. The one class consists, speaking generally, of those who act upon the invitation, express or implied, or the inducement of the owner or who necessarily enter on business with him, or in the discharge of a public or private duty;

the other consists of those who act voluntarily, without invitation, express or implied, or inducement from the owner or not through a private or public duty. The duty of the owner to either class differs fundamentally from that to the other, and to each it is clearly and with a precision frequently impossible in the law established and prescribed. While the ascertainment of the law is easy, judicial industry, apprehension and discrimination must frequently be exercised to decide to which class a licensee complaining of the acts of an owner belongs. The determination of that question in the present case will denote the legal duty of the defendant toward the intestate and the conclusion as to whether or not the evidence tended to support the verdict will be consequent.

Mere permission or consent, whether express or implied from sufferance or passive acquiescence, to do a certain thing gives a license, but does not necessarily imply an invitation to do it. The circumstances which may offer or sustain an implied invitation to a person to enter upon the property of another are, as the authorities attest, manifold, and whether they have that effect cannot be tested by any general and invariable rule. The Supreme Court of Massachusetts has formulated a rule potently indicative of the essentials of an implied invitation, if not comprehensive and absolute, as follows: " To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." (*Plummer* v. *Dill*, 156 Mass. 426.) The rule is approved in the recent cases of *Norris* v. *Nawn Contracting Co.* (206 Mass. 58); *Stanwood* v. *Clancey* (106 Me. 72); *Purtell* v. *Philadelphia & R. Coal & Iron Co.* (256 Ill. 110). In *Har-*

*greaves* v. *Deacon* (25 Mich. 5) the court said: "We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant." In the absence of some relation which inures to the mutual benefit of the owner or occupant of the property and the 'njured person, or to the former alone, it is generally held there is not an implied invitation on the part of the former.

Between the defendant and the telephone company, there was no mutuality. It was a matter of complete indifference to the former whether the wires of the latter were on or off the pole. There was between them no privity or contractual relation. The pole was not maintained by the defendant for the use of the telephone company as well as itself. The defendant did not receive any compensation, accommodation, privilege or benefit on account of the use of the pole by the telephone company. The sole relation between them was that created by the gratuitous permission of the defendant, implied through its passive acquiescence, that the telephone company might, until otherwise notified, have its wires as they were upon the pole and exclusively for its own benefit and convenience. The facts as found by the jury did not constitute an invitation, express or implied, to the telephone company to go upon or use the pole and in doing so it and its employees were mere volunteers or naked licensees who used the pole subject to all the concomitant conditions and perils and to whom the sole duty of the defendant was abstention from inflicting intentional or wanton or willful injury. (*Nicholson* v. *Erie Ry. Co.*, 41 N. Y. 525; *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240; *Cusick* v. *Adams*, 115 N. Y. 55; *Birch* v. *City of New York*, 190 N. Y. 397; *Sullivan* v. *Waters*, 14 Irish Com. L. 466;

*Redigan* v. *Boston & Me. R. R.*, 155 Mass. 44; *Fitz-patrick* v. *Cumberland Glass Mfg. Co.*, 61 N. J. L. 378; *Evansville & T. H. R. R. Co.* v. *Griffin*, 100 Ind. 221; *Rooney* v. *Woolworth*, 74 Conn. 720.)

Manifestly, the intestate in going upon the pole in the discharge of his duty as the employee of the telephone company was in the same relation to the defendant which his employer held. (*Sullivan* v. *Tioga R. R. Co.*, 112 N. Y. 643.)

The cases in which a company is under the duty of exercising reasonable care and prudence in securing the safety of the employee of another upon its pole go upon a principle inapplicable to and inhibited by the facts of this case. (*Illingsworth* v. *Boston Electric Light Co.*, 161 Mass. 583; *Cincinnati Gas & Electric Co.* v. *Archdeacon, Admr.*, 80 Ohio St. 27; *Downs* v. *Mo. & Kans. Tel. Co.*, 143 S. W. Rep. 889; *Newark Electric Light & Power Co.* v. *Garden*, 78 Fed. Rep. 74; *Trout* v. *Laclede Gas Light Co.*, 132 S. W. Rep. 58; *Chicago T. T. R. R. Co.* v. *Vandenberg*, 164 Ind. 470, 479, 480; *Sullivan* v. *Tioga R. R. Co.*, 112 N. Y. 643.)

The evidence does not authorize the claim and it is not made that there was on the part of the defendant an act of affirmative, intentional or willful misfeasance, fault or wrong. There was rather a negligent failure to so act that its wires would have been in safe condition and location — a default in not doing something which it might refrain from doing lawfully and without responsibility or liability to the intestate.

The pole did not suggest that it was property which any one had a right to use and assume to be in safe condition as does the crossing of a railroad, private in fact but public in use and enjoyment (*Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289; *Lamphear* v. *N. Y. C. & H. R. R. R. Co.*, 194 N. Y. 172; *Sweeny* v. *Old Colony & N. R. R. Co.*, 10 Allen, 368; *Bowler* v. *Pacific Mills*, 200 Mass. 364), nor did the telephone company or

the intestate use the pole through any inducement or allurement put forth by the defendant.

The principle which was decisive in *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484) does not apply to the facts here. In the *Braun* case the intestate was injured while upon the property of his employer, across which ran the wires of the defendant therein, who might reasonably have apprehended that conditions might arise or exist through which the owner of the property or his employees might come in contact with the wires. Had the wires of the defendant here been upon a pole of the telephone company it would have been under the duty toward the intestate of exercising reasonable care to maintain a proper insulation.

A decision that a property owner, who permits expressly or impliedly the affixing to his trees or structures by a telephone or telegraph company of its wires, enters into the duty towards it and its employees of exercising reasonable vigilance and care to maintain a safe access to them, would be contrary to the common understanding and practice, would be unjust and might give rise to serious consequences. The evidence presented by the record before us did not tend to support the verdict or permit the submission of it to the jury.

The judgment should be reversed and a new trial ordered, costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK, CUDDEBACK and MILLER, JJ., concur.

Judgment reversed, etc.