THE WOODS & SPRAGUE MILLING Co., INC., Claimant, *v.* THE STATE OF NEW YORK, Defendant.   (Claim No. 16644.)

Court of Claims, March 30, 1931.

*Fluhrer, Reed, Wage & White*, for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell* and *Edward J. Clark, Deputy Assistant Attorneys-General*, of counsel], for the defendant.

ACKERSON, J.   The claimant herein is a domestic corporation engaged in the milling business in the village of Albion, Orleans county, N. Y.

It has filed the claim herein alleging that a mill which it owns in said village of Albion, together with the contents thereof, was seriously damaged by water leaking through the canal bank.   The claimant filed a notice of intention herein with the proper State departments on the 26th day of November, 1919, alleging that the damage occurred to its property between May 15 and November 25, 1919.   The claim was filed herein on June 19, 1920, but it was never brought to trial till March, 1929.

The mill property is located on the bank of the canal in East State street in said village of Albion at the point where Sandy creek is carried under the canal by a culvert.   The property con-

sists, so far as buildings are concerned, of the main mill building constructed of stone forty-five feet long and forty feet wide which has a basement, two general floors and an attic. Connected with the stone building are two frame buildings. One to the north of it sixty feet long and eighteen feet wide and one to the west of the stone building forty feet long and twenty-one feet wide.

The buildings have been in their present situation for more than fifty years and the date of their construction is not revealed by the evidence in the case.

The blue line of the Barge canal intersects the west side of the westerly frame building at a point sixteen and fourteen one-hundredths feet south of its northwest corner and intersects the west end of the stone mill at a point twelve and forty-five one-hundredths feet south of the northwest corner thereof and the easterly line of the stone mill at a point four and sixty-six one-hundredths feet south of its northeast corner. It will be seen, therefore, that about one-half of these buildings are located on State property and have been there for more than fifty years. The record is silent as to the date of their construction and also as to whether such construction was with or without the consent of the State.

However, under such circumstances the courts have held that the claimant is not to be considered as a trespasser but as a licensee. In the case of *Watson* v. *Empire Engineering Corporation* (77 Misc. 543) Judge Pound defined the rights of one who builds a structure within the blue line as follows: " In the year 1873 plaintiff erected a sawmill on State lands adjacent to the Erie canal at Watson's bridge, and thereafter operated the same down to the time hereinafter mentioned. As others have done he built within the ' blue line.' His mill was allowed to remain, unmolested by the State, for so many years that it is presumed that the State acquiesced therein. He thus is to be regarded as a licensee rather than as a trespasser. As such his rights could be terminated without compensation only by giving him a reasonable notice to withdraw and remove his property from the premises."

The claimant stands here in the position, therefore, of a mere licensee. For an unknown length of time extending back for more than fifty years it has been the beneficiary of the State both as to the use of its land and also as to the use of the water from the canal for power, without which it could not have run its mill in the dry season of the year.

The duty of the State to this claimant as such licensee has been clearly set forth in the decisions of the courts of this State. In the case of *Donahue* v. *State of New York* (112 N. Y. 142) a feeder to the Champlain canal was covered by timber and planks, with

earth laid upon it, for more than twenty years, and used as a highway in the city of Cohoes. It was built and maintained by the State, and claimant was injured while crossing it.

The Court of Appeals held in that case, among other things, as follows: " The land in question was the property of the State, and, as such, was appropriated for the use described as a feeder to the canal, and never could have been the subject of any grant for the purpose of a public highway. The most that can be said in favor of appellant's contention is that the State suffered the use of this strip of its canal for purposes of passage over or upon it; but it was merely by sufferance that it was so used, and not by any agreement or permission. Nor did the State owe any active legal duty to protect those who so made use of its land. It owed a duty to abstain from injuring the plaintiff, either carelessly or intentionally; but it owed her no duty of active vigilance to see that she was not injured, while upon the land for her own convenience."

That same principle of law applies to the case at bar.

Prior to the year 1919 the State had enlarged the Erie canal by making it wider and deeper. It raised the banks in the vicinity of this mill and rebuilt them to some extent at least. After the canal was enlarged the level of the water opposite this mill was raised two and one-half feet. It was first so raised temporarily in 1918. In the spring of 1919 it was raised permanently two and one-half feet and some time thereafter the leak occurred which did the damage to claimant's mill. This leak, as the evidence shows, occurred some time in the month of May or June, 1919. It started at a point easterly of claimant's mill where the stone wall joins the wash wall or earth bank of the canal. The water worked its way beneath the surface of the ground from that point westerly and southerly until it finally discharged into the pit leading to the culvert under the canal at the westerly end of claimant's mill. In doing so the water worked its way under the frame part of the mill, along the northerly stone wall, and through the basement windows into the mill itself, injuring grain and machinery in the mill and partially undermining the north wall. As soon as it was discovered the State acted promptly and energetically and repaired the bank and stopped the leak.

The claimant cannot recover here unless it establishes by a fair preponderance of the testimony that the State was guilty of some active negligence, some willful, intentional, careless or heedless act which resulted in the injury complained of.

Apparently aware of that fact the claimant offered the testimony of Noah D. Smith to prove that the bank of the canal between its mill and the canal was improperly constructed. The State, how-

ever, showed by the engineer who was in charge of that construction that a rubble wall was constructed north of said mill next to the canal. This was a wall built of stone and mortar and while this wall might not have been actually impervious to water yet water could not run through it. That then back of this wall a V-shaped trench was dug and properly filled and compacted with earth and that between that trench and claimant's mill were several feet of original earth that were not disturbed. In addition to this all the witnesses agreed that the leak in question did not come through this wall at all but started at the easterly end of it, some distance east of claimant's mill where it joined the sloping wash wall or bank. This portion of the bank at that place, as the engineer testifies, was built in accordance with the plans and under the supervision of himself and inspectors of the State who were on the job all the time. There is absolutely no evidence in the case to show that this portion of the bank where the leak actually started was improperly constructed.

It is very clear, therefore, that the claimant did not offer any evidence on the trial to sustain the proposition that the State was guilty of any act, intentional or otherwise, that would, under the authorities, make it liable to this claimant, a mere licensee upon its property, for the damages which it sustained from the leak in question.

That the State owes no active legal duty to protect those who make use of its land as licensees has been held by this court in at least three cases: *Fiorelli* v. *State* (118 Misc. 865); *McCaghey* v. *State* (Id. 439); *Grimes* v. *State* (120 id. 710).

The reports contain numerous decisions in cases between individuals where the same principle of law is recognized in this and other States as is well demonstrated by the following extracts: In the case of *Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301), where the defendant maintained a turntable in a vacant lot over which the public were accustomed to travel, the plaintiff, a small child, in company with other children, came upon the lot and was injured in playing with the turntable. In expressing the view of this court that the plaintiff was not entitled to recover, Judge PECKHAM said: " The plaintiff was not on the land by invitation of the defendant nor in its business, but for his own purposes totally disconnected with the defendant's business. He was not a trespasser in the sense of his being unlawfully upon the premises, because the defendant by its course of conduct had impliedly granted a license to the public to use the land for the purpose above mentioned. This license, of course, could at any time have been revoked, and then any one going upon the land would have been a trespasser. * * *

The defendant had no right intentionally to injure him, and it would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience."

In the case of *Vaughan* v. *Transit Development Company* (222 N. Y. 79) plaintiff and other employees of another company had used a toilet room in a building of defendant for years without objection on the part of defendant. On the occasion in question plumbers, who were at work in and about the room which was lighted by a window, necessarily exposed an opening in the floor into which plaintiff fell while going to the toilet and sustained injuries for which he seeks to recover against the defendant. The plaintiff cannot recover since he was a bare licensee on the premises by sufferance and it was his duty to look out for himself. At page 82 Judge POUND says: " If plaintiff had had no permission to come on the premises he would have been a trespasser. If he had been there by invitation or on lawful business of interest to both parties he would have been an invitee. But he was there by permission, for his own convenience, and his status was that of a bare licensee. (*Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86.) Long-continued acquiescence in such use does not become an invitation. The law does not so penalize good nature or indifference nor does permission ripen into right. (*Stevens* v. *Nichols*, 155 Mass. 472.) "

In the case of *Heskell* v. *Auburn L., H. & P. Co.* (209 N. Y. 86) the court defines and distinguishes between licensees, express and implied, and those who act voluntarily without invitation, express or implied. The court in its opinion in this case says: " Mere permission or consent, whether express or implied from sufferance or passive acquiescence, to do a certain thing gives a license, but does not necessarily imply an invitation to do it. The circumstances which may offer or sustain an implied invitation to a person to enter upon the property of another are, as the authorities attest, manifold, and whether they have that effect cannot be tested by any general and invariable rule. The Supreme Court of Massachusetts has formulated a rule potently indicative of the essentials of an implied invitation, if not comprehensive and absolute, as follows: ' To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some

mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.' (*Plummer* v. *Dill,* 156 Mass. 426.) The rule is approved in the recent cases of *Norris* v. *Nawn Contracting Co.* (206 Mass. 58); *Stanwood* v. *Clancey* (106 Me. 72); *Purtell* v. *Philadelphia & R. Coal & Iron Co.* (256 Ill. 110). In *Hargreaves* v. *Deacon* (25 Mich. 5) the court said: ' We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant.' In the absence of some relation which inures to the mutual benefit of the owner or occupant of the property and the injured person, or to the former alone, it is generally held there is not an implied invitation on the part of the former."

In the case of *Fox* v. *Warner-Quinlan Asphalt Co.* (204 N. Y. 240) we find the following rule asserted (headnote): " The extent of the obligation of the owners or occupiers of land, not chargeable with affirmative negligence, to mere licensees permitted to go upon their land, is to refrain from inflicting upon such licensees intentional and wanton injury and from setting dangerous devices thereon. Where a person goes upon the premises of another without invitation, but simple as a bare licensee, and the owner of the property, passively, acquiesces in his coming, the owner is not liable for negligence if an injury is sustained by reason of a mere defect in the premises."

In the case of *Cusick* v. *Adams* (115 N. Y. 55) we find the following rule stated: " The principle is now well settled by repeated adjudications, in this country and in England, that where a person comes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence; for such person has taken all the risk upon himself."

The claimant for years had occupied the property of the State as a mere licensee. The State had acquiesced in this occupation. The State had not performed any act of any kind on its property in the vicinity of claimant's mill for months before this injury so far as the evidence discloses. This leak which caused the damage occurred without any apparent cause, for some unknown reason, and was in no way connected with any specific act of the State. Under such circumstances the claimant cannot recover and findings may be prepared directing the entry of judgment herein dismissing the claim.

BARRETT, P. J., concurs.