## TEXAS CO. v. HAGGARD.—134 S. W. (2d), 880.

Western Section.   March 28, 1939.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

476

Barham & Heiskell, of Jackson, and Winchester & Bearman, of Memphis, for plaintiff in error.

David P. Murray and Thomas McCorry, both of Jackson, and R. D. DeFord, of Savannah, for defendant in error.

SENTER, J. The parties will be referred to as in the court below; J. W. Haggard, plaintiff, and The Texas Company, defendant.

This is a suit to recover damages for personal injuries alleged to have been received by plaintiff on account of the negligence of the defendant in leaving open and exposed a filler pipe of an abandoned gasoline tank which was buried at the filling station of the Crump Mercantile Company, located on the South side of the public highway in the village of Crump in Hardin County, Tennessee.

It is averred in appropriate language, in substance, that the storehouse and filling station owned and operated by the Crump Mercantile Company was furnished by the defendant with the pumps, tanks and equipment for dispensing gasoline, and that the defendant owned and installed two pumps and gasoline tanks at said filling station operated by the Crump Mercantile Company. It is averred that the Texas Company had abandoned one of the sunken tanks which was buried beneath the surface of the ground and removed

the pump from said tank, but left the "filler pipe" through which gasoline was emptied from the gasoline tank truck into the gasoline tank, protruding about six inches above the surface, and failed to keep the same capped.

It is further averred that on April 11, 1937, about 5:00 o'clock P. M., plaintiff was standing in front of the Crump Mercantile Company where several other persons who resided in the village or community had gathered on the Sunday afternoon that the accident occurred, were engaged in general conversation; that the storehouse was located on the south side of the highway, and that there was a shed or canopy extending from the front of the store building and over the gasoline pumps and a driveway between the front of the building and the gasoline pumps; that plaintiff, not observing the open filler pipe which protruded several inches above the surface, lighted a cigarette with a match and after lighting the cigarette he dropped the match and it fell into the open filler pipe, resulting in an explosion and because of which plaintiff received serious burns about his face, head, eyes and ears. The declaration avers that this filling station was a public place where people were accustomed to assemble.

The declaration further averred in substance that the defendant owns and operates a gasoline distribution business with branch storage facilities and offices at Corinth, Mississippi; that it installed the filling station apparatus, including the sunken tanks and the gasoline pumps and the necessary connections, and that the Crump Mercantile Company was one of its agent dealers; that said filling station so operated by the Crump Mercantile Company was serviced by the defendant who delivered gasoline to the Crump Mercantile Company and emptied the gasoline into the buried gasoline tanks by means of the filler pipe; that there was originally installed two of these gasoline pumps and tanks, but one of said tanks had been abandoned and the pump removed by the defendant, leaving the exposed filler pipe which entered into this buried gasoline tank, without capping or properly protecting it.

The declaration avers that gasoline is a dangerous commodity and that this was known to the defendant, and that the failure of the defendant to remove said tank or to keep the same properly protected, created a dangerous condition constituting willful negligence; that the exposed condition of the filler pipe and the buried tank was the direct and proximate cause of the explosion resulting in the injuries sustained by plaintiff. It is averred that plaintiff had a lawful right to be at this filling station on the Sunday afternoon when this accident occurred, and without knowing "he struck a match and lighted a cigarette, oblivious to any danger, and when plaintiff dropped said match the same fell into the open 'filler pipe' connected to the underground gasoline storage tank of defendant corporation as aforesaid, which defendant corporation, its agents, servants, or employees,

had willfully, deliberately, knowingly and intentionally left open and uncapped, whereupon a terrific explosion, with great force and violence, occurred within said underground tank, and before plaintiff realized what was happening a streak, or blast of flame from the 'filler pipe' struck plaintiff in the face.''

The declaration is in two counts, but upon investigation we find that there is no real distinction or additional acts of negligence charged in the second count, but it merely goes a little more into detail.

To the declaration the defendant filed a plea of the general issue of not guilty; the willful and proximate negligence of the plaintiff; and the proximate contributory negligence of plaintiff.

At the conclusion of plaintiff's evidence the defendant moved the court for a directed verdict in its favor, which motion was overruled and disallowed. At the conclusion of all the evidence the motion for a directed verdict in favor of the defendant was renewed and was likewise overruled by the court.

There was a jury verdict in favor of plaintiff for the sum of $1,000. A motion for a new trial was seasonably filed by the defendant, which motion was overruled, and from the action of the court in overruling its motion for a new trial and in rendering judgment on the jury verdict, the defendant has appealed in error to this court.

There are but two assignments of error. First, that the court erred in overruling defendant's motion for a directed verdict at the conclusion of plaintiff's evidence, and second, that the court erred in overruling the defendant's motion for a directed verdict in its favor at the conclusion of all the evidence.

The only question presented on this appeal is whether or not there was any material evidence that would warrant the submission of the issues to the jury. For appellant it is contended that there was no material evidence on which a verdict for plaintiff could be supported; that the undisputed evidence and all reasonable inferences to be drawn therefrom failed to show that the defendant was guilty of any negligence; that the undisputed evidence and all reasonable inferences to be drawn therefrom show the plaintiff to be a mere license and that, therefore, the only duty owed to him by the defendant was the duty of not willfully or wantonly injuring him, and there is not only no proof of willful or wanton negligence upon the part of the defendant, but no proof that the defendant was guilty of any negligence under the undisputed evidence contained in the record; that under the undisputed evidence and all reasonable inferences to be drawn therefrom, it does not show such causal connection between the alleged facts of negligence and the injury as should have been anticipated by defendant as the usual and probable consequence of its acts, and finally, that the undisputed evidence and all reasonable inferences to be drawn therefrom show the plaintiff to be guilty of

proximate negligence which contributed directly and proximately to his injuries.

It appears without conflict in the evidence that the defendant was engaged in the wholesale distribution of gasoline and products; that the Crump Mercantile Company owned and operated a mercantile business at Crump, Tennessee, in a brick storehouse located on the south side of the concrete paved highway; that the village post office was kept in this brick storehouse. The front of the store building was located about 35 feet south of the highway. There was a shed or canopy extending from the front of the storehouse for a space sufficient to cover the gasoline tanks and the gravelled driveway. The gasoline tanks were located about 15 or 20 feet south of the highway with a gravelled driveway between the concrete paved highway and the gasoline pumps.

It further appears without conflict in the evidence that the defendant installed two underground gasoline tanks in front of the store building, and also installed the gasoline pumps; that all the apparatus for selling and dispensing gasoline was owned and installed by the defendant, and that it delivered gasoline to the Crump Mercantile Company by its tank trucks and emptied the gasoline into the respective underground tanks or containers; that as a part of the apparatus there were what is referred to in the record as "filler pipes" through which the gasoline for the respective tanks was poured into the tanks. It also appears without conflict in the evidence that it was the duty of the defendant to maintain this filling station apparatus, including the pumps, the underground tanks and the filler pipes. The filler pipes for each of the tanks extended about six inches above the surface of the ground, and into which pipe the gasoline was emptied in filling the underground tanks by the defendant. Each of these tanks was equipped with a gasoline pump used in servicing automobiles. When the tanks were installed the defendant furnished to the Crump Mercantile Company two grades of gasoline. About eight months prior to the happening of this accident, the defendant removed one of the pumps and abandoned the underground tank. The evidence shows without conflict that the reason why the underground tank was not removed, was that it was anticipated by the defendant that the Crump Mercantile Company would probably resume the sale of that grade of gasoline, and in which event it would only be necessary to attach the gasoline pump.

It also appears without conflict in the evidence that when this tank was abandoned and the gasoline pump removed, the filler pipe which entered the underground gasoline tank was capped with an iron screw cap that closed the filler pipe; that the cap from this filler pipe was frequently broken or taken off by some person or persons unknown to the Crump Mercantile Company or the defendant, and perhaps broken off by traffic; that when the cap was found off it would

be replaced by the defendant; that later the defendant or the Crump Mercantile Company drove a wood plug or wedge into the end of the filler pipe and that some person or persons unknown to defendant had removed this wood plug which was used in lieu of the iron cap, leaving the filler pipe and the underground tank exposed.

The accident occurred on Sunday afternoon, April 11, 1937, about 4:30 or 5:00 o'clock. The store was kept closed on Sundays and also no gasoline was sold or dispensed by the Crump Mercantile Company on Sundays. The post office was also kept closed on Sundays. It appears without conflict in the evidence that no representative or employee of the Crump Mercantile Company was present in or about the premises at the time the accident occurred. It is not shown by the record just when this wood plug or wedge had been removed from the filler pipe or just how long it had been exposed, but it does appear without conflict in the evidence that the plug which closed the filler pipe had been removed and the filler pipe was open at the time of the accident.

It also appears without conflict in the evidence that it was usual for persons living in and around the village of Crump to gather under this canopy or shed in front of the store on Sunday afternoon. On this particular Sunday afternoon plaintiff had been sitting under a porch of another closed store house on the opposite side of the highway, in company with another man. They left the porch of the store on the opposite side of the highway and crossed over the highway where several other persons had gathered. Plaintiff did not have any business to transact at the store. Nor did the other persons present under the shed. They were just a group of citizens who stopped by and were engaged in general conversation. The storehouse and shed and the underground tanks and the filler pipe were located on the privately owned property of the Crump Mercantile Company. Plaintiff does not claim that he was there on any particular business, but merely crossed over the highway to join the group that had assembled under the shed, without any special reason or purpose other than to be with the other persons who were there. As to these facts there is no conflict in the evidence.

Plaintiff testified that after walking over to the group assembled under this shed, he struck a match to light a cigarette; that he was sitting or squatting near the filler pipe; that after lighting the cigarette he dropped the match; that the match accidentally fell into the open filler pipe, causing the explosion. He testified that he was familiar with the premises and knew that the filler pipe was sometimes left uncapped.

There is other evidence in the record to the effect that the plaintiff did not casually or accidentally drop the lighted match into this open filler pipe, but some mention had been made that some child had dropped a half dollar into the open pipe and that others were looking

into the pipe to see if they could discover the money in the tank, and that plaintiff struck a match and dropped it into the tank through the filler pipe in an effort to discover whether he could see the coin in the tank, and that when he struck the match he was admonished by a person present that it was dangerous to hold the match over the filler pipe or to drop it into the filler pipe.

However, plaintiff denied that he intentionally dropped the match into the filler pipe or that he was looking for any money. So there is a decided conflict in the evidence as to why plaintiff happened to drop the lighted match into the open filler pipe which lead into the underground tank.

It also appears that all the gasoline that could be pumped from the underground tank had been pumped out at the time this tank had been abandoned and the pump removed, but that a small quantity of gasoline would remain in the bottom of the tank that could not be pumped out, and that fumes from the gasoline escaped through the open filler pipe. It is contended for appellee that this created a dangerous situation known to the defendant, but unknown to plaintiff.

Under the settled rule in this state for the purpose of passing upon a motion for a directed verdict, the testimony of plaintiff and his witnesses is accepted as the true facts and all countervailing evidence will not be considered. However, the first question that is presented on this appeal is with respect to the question of the negligence, if any, of the defendant in not removing the underground tank or in not keeping the filler pipe securely closed. We think that there is evidence that would warrant the conclusion that it was negligence for the defendant to permit this filler pipe and underground tank to remain exposed, if there was any reasonable way by which it could be prevented.

It appears without conflict in the evidence that the defendant had replaced the iron cap when the driver of the service truck would find that the cap had been broken off or removed. It also appears without conflict in the evidence that wood plugs had been used to close the filler pipe several times, either by the defendant's agent and employees or by the Crump Mercantile Company. We think that there is sufficient evidence to take the case to the jury as to whether the defendant had exercised reasonable care in the way and manner that this underground tank and filler pipe was maintained after the removal of the pump. However, we do not think that the record shows that the defendant was guilty of willful misconduct amounting to gross or wanton negligence in the way and manner in which this tank and filler pipe was maintained. The defendant, as the owner of the underground tank and the filler pipe, left the tank on the premises of the privately owned property of the Crump Mercantile Company with the knowledge and consent of the Crump Mercantile Company and did not remove the same when the pump

was removed because it was anticipated that later the Crump Mercantile Company would resume the sale of that grade of gasoline.

We are further of the opinion that gasoline is recognized as a dangerous commodity, requiring the exercise of a high degree of care in handling or protecting it from exposure. However, this simply means that in considering the question as to whether or not a person has exercised ordinary care and the degree of care to constitute ordinary care, increases according to the instrumentality being dealt with. In other words, what would be ordinary care in handling some commodities would not be ordinary care in handling other commodities. The question then is presented as to the duty which the defendant owed to the plaintiff under all the facts and circumstances appearing from the record with respect to this accident. This depends upon the status of plaintiff as to whether he was an invitee on the premises at the time of the accident or whether he was a mere licensee. There is no difference with respect to the duty which one owes to a mere trespasser and a licensee. In either case the general rule is that if a person is either a trespasser or a licensee, the duty which one owes to him is not to willfully injure him. The distinction between a licensee and an invitee has been clearly defined and stated in numerous cases and by the text-writers. A person is a licensee where his entry or use of the premises is permitted by the owner or person in control thereof, or by operation of law, so that he is not a trespasser but without any express or implied invitation from the owner or occupant. Clapp v. La Grill, 103 Tenn., 164, 52 S. W., 134; Worsham v. Dempster, 148 Tenn., 267, 255 S. W., 52; Westborne Coal Co. v. Willoughby, 133 Tenn., 257, 180 S. W., 322; 45 C. J., Sec. 194, p. 788.

In Worsham v. Dempster, supra [148 Tenn., 267, 255 S. W., 54], the question of an implied invitation was considered, the court stating:

"Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise."

In the case of Little River Ry. Co. v. Dotson, 11 Tenn. App., 538, it was said:

"An invitation . . . is inferred, where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."

In the case of Rhodes v. J. R. Watkins & Co., 16 Tenn. App., 163, 65 S. W. (2d), 1098, this court held that where the injured person went into the building of the defendant seeking employment she was a mere licensee and that there was no liability for defendant's failure to exercise ordinary care in keeping the premises safe.

In the case of Westborne Coal Co. v. Willoughby, supra, it was held that an employee of the defendant who entered on the premises during hours when he was not on duty and not in the usual course of business, and was not there on any mission for the benefit of the owner of the premises, was a mere licensee, and that the defendant owed to him no duty other than not to willfully or intentionally injure him and to warn such licensee of any new dangers created on the premises. See also Clapp v. La Grill, supra; Worsham v. Dempster, supra; Michigan St. Railroad Co. v. Roe, 118 Tenn., 601, 102 S. W., 343; Burroughs Adding Mach. Co. v. Fryar, 132 Tenn., 612, 179 S. W., 127, L. R. A., 1916B, 791; Rhodes v. J. R. Watkins Co., supra.

█ It is urged upon this court by appellee that the plaintiff occupied the status of an implied invitee. This contention proceeds upon the theory that the Crump Mercantile Company and the defendant knew that it was the custom of persons residing in the community to gather under the protecting shed of this store and filling station on Sunday afternoons for the usual social conversation generally indulged in by friends and associates of the community; that with this knowledge upon the part of the Crump Mercantile Company and the defendant, that such persons so gathered were implied invitees.

We cannot accept this reasoning. The persons who gathered there on the afternoon in question did not have any business of their own to transact, nor did they gather there for the purpose of extending any benefits to either the Crump Mercantile Company or to the defendant. While it may be true that it had become something of a loafing place for men residing in the community, the fact remains that it was private property. They did not gather for any business reasons or purposes, and the fact that the Crump Mercantile Company or the defendant knew of this custom was not an implied invitation by the defendant or the Crump Mercantile Company to persons so gathered to use the premises for loafing or to gather to while away the time by engaging in social conversation. Under the definition of an invitee as distinguished from a licensee, and under the undisputed facts in the record, we think that plaintiff was a mere licensee at the time of the accident.

The fact that the post office was located in this store building would not change the result. The post office as well as the store was closed on Sundays. Plaintiff does not claim that he went to the post office to obtain mail or to mail a letter. According to his own testimony he had absolutely no business to transact at the store, but merely crossed the highway to be in company with other persons who were there for purely social contact.

██ We are further of the opinion that there is no evidence contained in the record that would warrant the inference that the defend-

ant was guilty of gross negligence which would imply willfulness or wantonness in the way and manner this underground storage tank and filler pipe was maintained. We think the defendant had the right to leave the underground storage tank in place for future use, but that it was its duty to exercise ordinary care to prevent an injury therefrom.

We have already referred to the undisputed testimony that the defendant tried to keep this pipe closed by the use of an iron cap or by driving a wood plug into the top of the filler pipe. While it does appear from the record that the iron caps had been placed on the filler pipe as well as the wood plugs that had been driven in the top of the pipe, had been taken off or broken off by some person unknown to the Crump Mercantile Company or to the defendant. It does not appear just when the last wood plug or wedge had been removed, or how long the pipe had remained exposed without a cap before the accident. It does not appear that either the Crump Mercantile Company or the defendant had any knowledge or notice that the wood plug had been removed at the time of the accident. Nor do we think that the fact that no warning sign had been posted would constitute gross negligence. Plaintiff admits that he knew of the existence of this filler pipe. He also admitted that he had seen this filler pipe open on other occasions. If there had been a warning sign present, it could have done no more than to have warned him of a condition with which he was wholly familiar. According to his own statement, he dropped this lighted match into the pipe without looking or without thinking. Accepting his statement that he did not intentionally drop the match into the open pipe, the fact remains that he knew of its existence. So that a warning sign could have served no purpose so far as this accident was concerned, but at most would have been a remote and not the proximate cause of the injury.

We cannot escape the conclusion that plaintiff was a mere licensee on the premises, and that the defendant only owed to him the duty not to willfully, or intentionally or by acts of gross negligence, create a situation resulting in the injury sustained by him.

The cases cited and relied upon by appellee we do not think are applicable to the facts of the present case. The case of Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, 242 S. W., 646, dealt with the duty which the owner of the premises owed to an invitee. In that case the court said:

"The owner of premises must use reasonable care to see that it is safe to those whom he invites there, and if there are dangers there not obvious to them, of which he knows, or with reasonable care should have known, it is his duty to give warning thereof."

In the case of Stone v. Texas Co., 180 N. C. 546, 105 S. E. 425, 430, 12 A. L. R., 1297, cited by appellee, it appears from the opinion that the escaping gasoline leaked out of a tank car onto the street. In that case the court stated:

"If the presence [of gasoline] on Madison street in the city of Louisville . . . caused by the negligence of the appellee, Bridge and Railroad Company, it seems to us that the probable consequences of its coming in contact with fire and causing an explosion was too plain a proposition to admit of doubt. Indeed it was most probable that some one would strike a match to light a cigar, or for other purposes in the midst of the gas. In our opinion, therefore, the act of one lighting or throwing a match under such circumstances cannot be said to be the (only) efficient cause of the explosion. It did not of itself produce the explosion, nor could it have done so without the assistance and contribution resulting from the primary negligence, . . . in furnishing the presence of the gas in the street."

Of course, if a person creates a dangerous situation on a public street, as the result of negligence, and a person who has the legal right to the use of the street suffers thereby, the wrongdoer would be liable. The user of a public street occupies an entirely different status from one who is a mere licensee on privately owned premises.

Nor do we find anything in the record that makes applicable the rule of res ipsa loquitur. While this question is presented by appellee, there are no facts that would warrant the application of the rule.

It results that we think there was no material evidence to warrant the submission of the case to the jury, and that the learned trial judge was in error in overruling and disallowing the motion of defendant for a directed verdict in its favor at the conclusion of all the evidence.

It follows that the judgment of the lower court is reversed and the suit dismissed at the cost of plaintiff, including the cost of this appeal.

Anderson and Ketchum, JJ., concur.