JAMES DONNELLY PHILLIPS, by next friend VIRGINIA LOU PHILLIPS, v. GERSON BUSH.

VIRGINIA LOU PHILLIPS, v. GERSON BUSH.—363 S. W. (2d) 401.

Eastern Section. June 27, 1961.

Certiorari Denied by Supreme Court November 28, 1962.

Foster D. Arnett and Jack B. Draper, Knoxville, for plaintiffs in error.

Poore, Cox, Baker & McAuley, Knoxville, for defendant in error.

COOPER, J. In these consolidated actions, the parties will be referred to as they appeared below. The Plaintiff James Donnelly Phillips, minor son of the plaintiff Virginia Lou Phillips, brought suit against the defendant Gerson Bush seeking to recover for injuries received in the explosion of a dynamite cap that had been found on premises owned by the defendant. The plaintiff, Virginia Lou Phillips, brought suit seeking to recover for loss of her son's services, for medical and other necessary expenses incurred in the treatment of his injuries, and for wages she lost while attending to her son's injuries.

In their declarations, the plaintiffs averred that on October 18, 1957, Jimmie went on the premises of the defendant to try to sell "items of handicraft to the tenants"; that while on the premises, Jimmie found a piece of colored wire protruding from the ground; that he uncovered it and carried it and the "cap-like" device, which was attached to the wire, to his home. Subsequently, Jimmie, not knowing the nature of the "cap-like" device, connected the wire to a dry-cell battery and the blasting cap exploded, inflicting serious injuries on Jimmie.

The plaintiffs charged that the defendant knew or, by the exercise of ordinary care, should have known of the presence of the blasting cap on the premises of a multiple tenant dwelling where the public could be expected to visit; that the defendant was under a duty to remove the blasting cap and that his failure to do so was negligence

which proximately caused the explosion resulting in injuries to the plaintiff, James Phillips.

The defendant filed special pleas denying the violation of any duty owed to the plaintiffs, denying that a dynamite cap was ever on his premises and denying that Jimmie found one there.

The cases were tried before the Court and a jury. The defendant moved for a directed verdict in each case at the close of the plaintiffs proof and again at the close of all the proof on the ground that there was no evidence upon which the jury could base a verdict against the defendant. These motions were overruled, and the issues were submitted to the jury. The jury was unable to agree and an order of mistrial was entered in each case.

On motion of the defendant, the trial court set aside the orders of mistrial and directed a verdict in favor of the defendant in each case on the ground that, as a matter of law, the plaintiff was only a licensee at the time he found the dynamite cap, and that he had not been wilfully and deliberately injured. The plaintiffs then filed motions for a new trial, which was overruled, causing the plaintiffs to appeal to this court.

The sole issue raised by the plaintiffs' assignment of error is whether the trial court erred in directing a verdict for the defendant.

According to that view of the evidence most favorable to the plaintiffs, the Plaintiff James Phillips, and his friend, Bobby Carpenter, wove some potholders, and decided to try to sell them to housewives in the neighborhood. Accordingly, the boys visited two apartment houses in the vicinity of the plaintiffs' home, but were unable

to get the tenants to come to the door. The boys then went to the apartment house owned by the defendant to try to sell the potholders. Being unable to get the first floor tenants to come to their door, the boys separated. Bobby Carpenter took the potholders and went to the second floor to try to sell them. Jimmie went down the steps at the west end of the apartment building to see if there were any apartments in the basement area. Jimmie found that this area was still under construction and that the apartments were unfinished. Jimmie, however, continued to follow the walkway to the front of the basement area where he saw a 10 inch long piece of orange colored wire sticking out of the ground. Jimmie uncovered this wire and found that it was 9 feet 7 inches in length and had a "cap-like" device on the end that was under ground. Jimmie, not knowing what he had found, carried the wire and cap to his home. On October 30, 1957, some twelve days later, Jimmie connected the wire to a dry cell battery and the dynamite cap exploded, causing serious injuries to Jimmie.

In the light of the above facts, what was the status of the plaintiff, James Phillips, when he went onto the premises owned by the defendant?

In Smith v. Burks, 43 Tenn. App. 32, 305 S. W. (2d) 748, the Court states that:

" 'Those who come upon the premises of another are in one of three classes: Invitees are those who are expressly or impliedly invited, as a customer to a store; licensees are persons whose presence is not invited, but tolerated; trespassers are persons who are neither suffered nor invited to enter.' "

An implied invitation was defined in Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 288, 210 S. W. 153, as follows:

"Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise."

The Court goes on to say that

"The great weight of authority, however, qualifies this definition of implied invitation by providing that where one goes upon the premises of another, for any of the purposes stated above, he must confine himself to such parts of the premises as are included in the invitation. Such implied invitation does not involve in its scope such parts of the establishment to which the public is not invited." See also Smith v. Burks, supra.

In the case of Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S. W. 646, the Court voiced the duty which the owner of the premises owed to an invitee. In that case the Court said:

"The owner of property must use reasonable care to see that his place is safe for those whom he invites to come there, and if there are dangers on his premises not obvious to such persons of which he knows, or of which with reasonable care he should have known, it is his duty to give warning of such dangers."

The Tennessee Court of Appeals for the Western Section, in the case of Texas Company v. Haggard, 23 Tenn. App. 475, 134 S. W. (2d) 880, defines a licensee as follows:

"A person is a licensee where his entry or use of the premises is permitted by the owner or person in control thereof, or by operation of law, so that he is not a trespasser but without any express or implied invitation from the owner or occupant." See cases there cited.

■ Where the plaintiff is a mere licensee, the defendant owner owes the plaintiff "no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness." Smith v. Burks; supra.

We have been unable to find and counsel have not cited us to a decision by the Appellate Courts of Tennessee where the above principles have been applied in determining the status of a "door to door" salesman or peddler. In fact, there are relatively few such cases reported in any jurisdiction. It may be because, as stated in 40 Am. Jur. 955 Peddlers, Transient Dealers, and Solicitors, that

"In most instances of peddling, soliciting or itinerant selling, it is difficult or impossible to show that an owner of premises or his tenant has invited the person so employed to enter, and such person is, consequently, at most a mere licensee to whom the owner owes no duty other than that of refraining from wilful or wanton misconduct."

In the case of Stacy v. Shapiro, 212 App. Div. 723, 209 N. Y. S. 305, the Court dealt directly with the question of

whether or not a door to door solicitor was an implied invitee or a licensee at the time she was on the defendant's premises. In that case, the plaintiff was employed to call on housewives and explain the merits of her employer's soap product. The plaintiff would also give a coupon to each housewife so that she could secure a free sample of her employer's product. The plaintiff went onto the premises of the defendant, and before talking with any tenant, she fell and was injured. The Court said:

"One of the questions involved is the degree of care which the owner of the apartment house owed to the plaintiff. If she can be said to have been invited upon the premises, then the owner must show freedom from any lack of care which would amount to passive negligence; but if the plaintiff had not been invited, and all that can be said is that the owner did not forbid or interfere with the coming upon the premises by the plaintiff, then the plaintiff at the most was a licensee, who must take the premises as she finds them, and the measure of the obligation of the defendant was to abstain from acts which would amount to affirmative negligence. Clearly the plaintiff had not been invited by any one. She went upon the premises in her own interest and that of her employers. Concededly the housewives upon whom she intended calling did not know that she was coming. It thus appears that there was no invitation in fact.

"The plaintiff argues that she intended giving away the aforesaid coupons, and would have been welcomed by the housewives, if her message had been known, and therefore that an invitation might

be implied. This obviously is unsound. What reception the plaintiff would have received is but speculation, which emphasizes the fact that she had not been invited. If it should be held that, under the aforesaid circumstances, an invitation had been extended in law, then all the distinction which experience has evolved between those who are licensees and invitees would be wiped out. The plaintiff, therefore, at the best was only a bare licensee upon the premises, and to such the owner was under no duty, except to refrain from affirmative acts of negligence.''

In the case of Norris v. Hugh Nawn Contracting Company, 206 Mass. 58, 91 N. E. 886, 31 L. R. A., N. S., 623, the Court dealt with a situation in which a newsboy, 14 years of age, was killed while on the defendant's premises for the purpose of selling newspapers to the defendant's employees. The Court found that the newsboy occupied a status no higher than that of a licensee, and accordingly, that the defendant was not liable for failing to have the premises in a reasonably safe condition. The Court stated:

''If he went upon the ledge simply for the purpose of selling papers in his own interest and that of his employer, he would be only a licensee, who would take the risk of such dangers as existed there from the condition of the place and the methods of carrying on business, whether the business was conducted carefully or negligently.''

In deciding the status of a plaintiff who came onto the defendant's premises seeking employment, the Western Section of the Tennessee Court of Appeals stated in

Rhodes v. Watkins & Co., 16 Tenn. App. 163, 65 S. W. (2d) 1098 that:

"We do not think that she sustained the relation of either an express or an implied invitee to the premises. We think that she was a licensee only. She was there on her own business seeking employment. She was not there for the benefit of the defendant, nor in any matter connected with defendant's business."

In the light of the foregoing authorities and the facts as shown by the record in this case, we are of the opinion that when the plaintiff, James Phillips, went onto the defendant's premises to try to sell potholders, he was a licensee only. Neither the defendant nor any of his tenants invited Jimmie onto the premises nor knew that he had ever been there. Jimmie was there in his own interest and not for the benefit, either real or supposed, of the defendant or any of his tenants.

Since plaintiff was a mere licensee, and since there was no showing or even an allegation of gross negligence or willful injury of the plaintiff, James Phillips, by the defendant, we think the trial judge correctly directed verdicts for the defendant. Judgment of the Court below is affirmed, and costs of this appeal are adjudged against the plaintiffs, and their sureties.

McAmis, P. J., and Hale, J., concur.